## INSURANCE COMPANY *v.* FOLSOM.

1. The doctrine reasserted, as often adjudged in this court before, that where a case is tried by the Circuit Court under the act of March 3d, 1865, if the finding be a general one, this court will only review questions of law arising in the progress of the trial and duly presented by a bill of exceptions, or errors of law apparent on the face of the pleadings.

2. Under the act above named the Circuit Court is not required to make a special finding.

3. Where parties mean to insure a vessel "lost or not lost," the use of that phrase is not necessary to make the policy retrospective. It is sufficient if it appear by the description of the risk and the subject-matter of the contract that the policy was intended to cover a previous loss.

4. Where a policy of insurance, following the exact language of the application, insured on the 1st of March, 1869, a vessel then at sea, "at and from the 1st day of January, 1869, at noon, until the 1st day of January, 1870, at noon," nothing being said in either policy or application as to "lost or not lost," nor about who was the master of the vessel, nor as to what voyage she was on: *held*, on a suit on the policy—and the company not having shown that the name of the master or the precise destination were material facts—that the application had no tendency to show that the assured when he made the application did not communicate to the defendants all the material facts and circumstances within his knowledge, and answer truly all questions put to him in regard to those several matters.

ERROR to the Circuit Court for the Southern District of New York; the case being thus:

On the 6th of January, 1869, the schooner B. F. Folsom (*John Orlando, master*), and owned by a person whose name she bore, Mr. B. F. Folsom, resident in Philadelphia, together with Orlando, the captain and husband, sailed from *Boston* for Montevideo and *Buenos Ayres.* When out six days she sprung a leak, and in a few days afterwards became wholly disabled. Another vessel, bound for Bremen, passing along, took off all aboard and carried them to Bremerhaven, an outer port of Bremen, where, on the 18th of February, 1869, all were safely landed. The vessel itself was lost. At Bremerhaven, the master being wholly without funds or credit, could not telegraph. But he wrote two days after his arrival, that is to say, he wrote on the 20th of

February, to Mr. Folsom, at Philadelphia, and mailed the letter on the day on which it was written.

On the 1st of March, 1869, the Mercantile Mutual Insurance Company of New York insured the vessel, valued at $35,000, on Folsom's application, "at and from the first day of January, 1869, at noon, until the first day of January, 1870, at noon;" nothing being said in the policy about "lost or not lost," nor about who was the master of the vessel, nor on what voyage she then was.

The letter of the master to Folsom which had been mailed at Bremen on the 20th of February, 1869, arriving in due course at Philadelphia was received by Folsom, and the loss of the vessel being indisputable, Folsom claimed the insurance-money. The company declining to pay, he brought suit in ordinary form on the policy. Plea, the general issue.

The cause was tried without a jury, the jury having been waived by a stipulation duly filed, pursuant to the act of Congress of March 3d, 1865, which authorizes such mode of trial and enacts in regard to it,*

"The findings of the court upon the facts, *which findings* MAY *be either general or special,* shall have the same effect as the verdict of a jury. The rulings of the court in the case, *in the progress of the trial,* when excepted to at the time, may be reviewed by the Supreme Court of the United States upon a writ of error, or upon appeal, provided the rulings be duly presented by a bill of exceptions. When the finding is special, the review may also extend to the determination of the sufficiency of the facts found to support the judgment."

On the trial the policy having been put in evidence, and it being admitted that the proper preliminary proofs of loss and of interest had been furnished by the plaintiff to the company, the plaintiff rested. The record proceeded:

"Whereupon the counsel for the said defendant did then and there insist before the judge of the said Circuit Court, on the behalf of the said defendant, that the said several matters so produced and given in evidence on the part of the said plaintiff,

---

* Section 4, 13 Stat. at Large, 501.

as aforesaid, were insufficient and ought not to be admitted or allowed as decisive evidence to entitle the said plaintiff to a verdict. But to this the counsel for the said plaintiff did then and there object, and insist before the judge of the said Circuit Court that the same were sufficient and ought to be admitted and allowed to entitle the said plaintiff to a verdict; and the judge of the said Circuit Court did then and there declare and deliver his opinion, that the said several matters so produced and given in evidence on the part of the said plaintiff were sufficient to entitle the said plaintiff to a verdict."

To this ruling the defendant excepted.

The insurance company then showed that on the 22d of February, 1869, there had been published in various newspapers in New York, as also in two newspapers in Philadelphia, this telegraphic despatch :

"Liverpool, February 21st.

"The *Orlando*, from *Baltimore* for *Buenos Ayres*, has been lost at sea. Crew saved and landed at Bremerhaven."

Folsom had seen and read this despatch, and the insurance company which took, at its office in New York, the papers containing it, kept what was called a despatch-book, in which the despatch, together with records of seventeen other marine disasters, was, on the same 22d of February when it appeared, posted by a clerk, whose duty it was to post in such book notices of all marine disasters. Over the despatch was written in large letters "Orlando."

It was admitted by the plaintiff that in Lloyd's Register there was no schooner named Orlando, but that there was a bark named Orlanda, a whaler, and that a bark of the name of Orlando had been owned, within two or three years, by a person who was then a partner of the plaintiff; and that at the time when he applied for the insurance he did not call the company's attention to the publication which had appeared in the papers, and that he made the application himself.

The company in turn admitted that in the Register for the year 1869, which they used in their office, as in the

Register of 1868, which they also had used, the schooner
"B. F. Folsom" was rated, and that under such name and
rating there appeared the name of "J. Orlando, captain."

The company then offered in evidence Folsom's applica-
tion for insurance, which was in these words:

"Insurance is wanted by B. F. Folsom for account of whom
it may concern, loss, if any, payable to him, for $3000, on
schooner B. F. Folsom; vessel valued at $35,000, and to be in-
sured at and from the first day of January, 1869, at noon, until
the first day of January, 1870, at noon."

The purpose of the offer of this evidence was apparently
to show that in applying for insurance Folsom had sup-
pressed the name of the master, Orlando, and the ports to
which the vessel was sailing, to wit, Montevideo and *Buenos
Ayres*, and so to bring on the inference that in the appli-
cation he meant to divert the company's recollection or
attention from the despatch previously received by it and
on its books, in which it was mentioned that a vessel, where
the peculiar name of "Orlando" appeared, and which ves-
sel the despatch mentioned was on her way to *Buenos Ayres*,
as one port, had been lost at sea.

The plaintiff objected to the reception of the evidence on
the ground that the application was merged in the policy,
and that the plea did not allege that the policy was obtained
by any fraud or misrepresentation. The court rejected the
evidence.

The company's counsel then requested the court to rule
on numerous propositions, substantially as follows:

*First.* That as the loss occurred before the issuing of the
policy, and the words, "lost or not lost," were not contained
therein, the insurance never took effect, and that, therefore,
the plaintiff could not recover.

*Second.* That at the time of the application for insurance,
and the issuing of the policy, the plaintiff ought to have
communicated to the company—

(*a.*) The existence of the despatch appearing in the news-
papers.

(*b.*) That he had seen it.

(*c.*) The surmises or conjectures, if any, which he had with reference to the same.

*Third.* That it was incumbent upon the plaintiff to prove affirmatively, that at the time of application for insurance and of the issuing of the policy, he had communicated to the company the information that the vessel had sailed on a voyage from Boston to Montevideo and Buenos Ayres, and that the name of her master was John Orlando.

*Fourth.* That the master having failed to advise the owner by telegraph of the loss of the vessel, the plaintiff could not recover.

But the judge of the Circuit Court refused to rule in accordance with any one of these several requests; to which refusals the counsel for the defendant excepted.

Both parties here rested.   The record proceeded:

"And the counsel for the defendant, after the putting in of the evidence was completed, and before the conclusion of the trial, further insisted that the matters so proved and given in evidence, on the part of the said defendant, as hereinbefore set forth, taken in connection with the matters proved and given in evidence, on the part of the plaintiff, as hereinbefore set forth, were sufficient and ought to be admitted and allowed as decisive evidence to entitle the said defendant to a decision in their favor, and to bar the said plaintiff of his action aforesaid, and did then and there pray the said court to admit and allow the said matters so proved and given in evidence, in connection as aforesaid, to be conclusive evidence in favor of the said defendant, to entitle them to a decision in their favor, and to bar the said plaintiff of his action aforesaid; but the said court decided that the matters so proved and given in evidence on the part of the said defendant, taken in connection with the matters so proved and given in evidence on the part of the said plaintiff, were not sufficient to bar the said plaintiff of his action aforesaid, and refused to make and render its decision in favor of the said defendant, but found in favor of the plaintiff, upon the evidence, for the sum of $3348.20; to which decision the said counsel for the defendant then and there duly excepted."

Thereupon the counsel for the defendant requested the court to make the certain special findings of fact [setting them out], to the end that the same might be reviewed. The record proceeded:

"But the court refused to make any special findings of fact herein, to which refusal the counsel for the defendant did then and there except."

The company brought the case here on error.

*Mr. J. C. Carter, for the Insurance Company, plaintiff in error:*

1. A radical error of the court below was in refusing to make any special finding of facts. The chief argument of the other side will be that it has not done so, and that, *therefore,* under the act of March 3d, 1865, we have not got the case which we wish to have the judgment of this court upon at all before it. But this omission of the court below to comply with our request we assign as error. The right of having an appellate tribunal pass upon matters of law in all contests between parties, is regarded in some sort as a sacred right by our people. It is given in the broadest terms by the great Judiciary Act of 1789.* The act of March 3d, 1865, could not have meant to deprive the suitor of this right, by leaving it to the discretion of the *judge* to say whether or not he will have his judicial capacity passed on by a higher tribunal. Such a construction would make the act a trap, to injure suitors, instead of an enactment for their benefit. It is the suitor, therefore, not the judge who, under the provision that "the findings may be either general or special," is to elect in what form he will have them.

2. But if this were not so we have enough left to ask a reversal. At the close of the plaintiff's case we insisted that the plaintiff's evidence was insufficient to entitle him to a verdict. He had introduced and relied on his policy; a policy which was fatally defective in the fact that it contained neither the expression "lost or not lost," nor any equivalent expression. Now, when a chattel has been de-

---

* Section 21.

stroyed it has céased to be the subject of ownership; and every contract in reference to it, based on the implied understanding and agreement that it is in existence, is void. This undoubtedly is the general principle. And though an exception exists in the contract of insurance, it exists only— in view of the very hazardous nature of the assumption— when the insurer expressly agrees to assume the risk of a prior total loss of the thing, and though it thus at the time of the contract have no existence at all. This sort of agreement is made by the long-used and well-defined words "LOST OR NOT LOST." And from the language of good text-books it would seem as if the very words were essential.

Arnould says:[*]

"A time policy, like a voyage policy, may be effected retrospectively *if it contain* the clause 'lost or not lost.'"

So Smith in his work on Mercantile Law:[†]

"When the words 'lost or not lost' (Gallicé *sur bonnes et mauvaises nouvelles*) are inserted, they render the underwriters liable in respect of loss by any of the above perils, though the ship be lost at the time of insurance, a circumstance which *but for those words* would avoid the policy."

And yet again Hilliard:[‡]

"These words, 'lost or not lost,' which follow the word 'insured' in the policy, are words of the greatest importance in this contract."

Certainly if these exact words are not essential, some words of equivalent meaning are. But no words of like effect with the confessedly proper ones were used in this policy; for making the policy cover the past month in terms, by fixing the date instead of the place of departure, will not alter the effect of the contract, or make the risk greater.

The court also erred in refusing to admit the application for insurance. It was made by Folsom himself, and by

---

[*] On Insurance, vol. 2, 2d American edition, 416.

[†] Page 347.　　　　　[‡] On Marine Insurance 10.

showing what he had stated and what he had not stated, it tended directly to the purpose for which it was offered.

[The counsel then went into a learned argument to show that Folsom had knowledge of facts material to the risk and had concealed them; that the burden of proof rested on him to show the communication of them to the company, and that no presumption existed in his favor that he had done so, or that he was ignorant of a material fact which it was shown might have been known to him; that concealment might be proved as a defence under the plea of the general issue. He also argued that it was the duty of Orlando, captain and part owner of the vessel, to communicate by telegraph (that being a usual mode of communication) to the other owners the loss of the vessel, and that the omission to do so rendered void the policy issued after such loss might by that means have been communicated.]

*Mr. C. A. Seward, contra:*

It is perfectly settled, under the act of March 3d, 1865, that if the finding be a general one, the appellate court will only review questions of law arising on the exceptions contained in the bill of exceptions, and the errors of law apparent on the face of the pleadings.* The finding here was general, and of course all that latter part of the learned counsel's argument† is irrelative to what is before the court.

Neither was the court *bound* to find specially. There is nothing in the act which obliges it to do so. If the party cannot dictate to a jury whether it shall find specially or generally, why shall he to a court?

So as to what was insisted on below at the close of the plaintiff's case. It was in effect a motion for a peremptory nonsuit against the plaintiff's will, a thing which by the

---

* Insurance Co. *v.* Tweed, 7 Wallace, 44; Generes *v.* Bonnemer, Ib. 564; Flanders *v.* Tweed, 9 Id. 425; Coddington *v.* Richardson, 10 Id. 516; Generes *v.* Campbell, 11 Id. 193; Kearney *v.* Case, 12 Id. 276; Bethell *v.* Mathews, 13 Id. 1; Dirst *v.* Morris, 14 Id. 484; City of Richmond *v.* Smith, 15 Id. 429, 437, 438.

† The part within brackets.—REP.

settled modern practice of the Federal courts is not allowable. But if it were not this sort of motion and were allowable, the assumption made in it is a wrong one, and the whole argument is without weight; it being perfectly settled that the words " lost or not lost," however usual, are not essential words, and that any other words by which a meaning to insure " lost or not lost" is shown, are as good. That here the purpose to make what was in effect " a lost or not lost" policy is plain. If it was not the purpose, the clause by which it was provided that the insurance was to take effect two months before the date of the policy would be nugatory, and the absurd result would follow that the assured was paying for insurance during two months when the company assumed no risk whatever. In *Hammond* v. *Allen*,* the court (Story, J.) says:

" The policy would be binding though the ship were lost at the time, and though the policy had not the words, ' lost or not lost.' "

There is nothing in text-writers, which, rightly interpreted, denies what we say.†

The court did not err, as the exception implies, in refusing to receive Folsom's application for insurance. The policy, which confessedly was the company's act, followed it exactly. It did not state any more than the application, who the master of the vessel was, or to what port she was sailing. The application had no tendency to show that Folsom did not communicate all material facts which he knew, and answer truly all questions put to him which the company thought material. The very fact that the application was retrospective showed that it was for a vessel that might be lost. Besides all which it is notorious as matter of fact, that the applications are never filled by the applicant for insurance. The secretary or clerks of the company fill them, after such inquiries as they please to make, and the applicant simply signs the blank filled up. More especially was

---

* 2 Sumner, 387.

† See 1 Phillips on Insurance, § 925; 2 Parsons on Marine Insurance, 44; 1 Arnould on Insurance, 26; 3 Kent, 259, marginal.

it inadmissible to bring on an inference of fraud after the company had admitted that in the Lloyd's Register used by it, both in the years 1868 and 1869, the name and rating of the schooner B. F. Folsom appeared, as well as the fact that John Orlando was her master, and when, in addition, the insurance company had introduced no evidence tending to show that such concealment, if any took place, was material to the risk.

As to the other points made by opposing counsel,* though they are not, in view of the fact that the finding was general and not special, upon matters which are before this court at all, it may be observed that the company knew of the despatch as well as Folsom; that the assured is not bound to communicate to underwriters intelligence of so general and indifferent a nature—as here, where neither the correct name of the vessel, her correct port of departure, or her correct first port of destination was given—as that its application to the subject is doubtful and remote; nor to communicate to them what is in newspapers taken by themselves, especially what they have actually cut out and signalized as matter to be noted; nor to communicate to them the mere surmises or conjectures which were in the mind of the assured, and which may or may not have led to the insurance. As to the objection that no telegram was sent, it is answer enough that Captain Orlando was penniless and could not send a telegram, even if one were obligatory in ordinary cases. But, as already said, none of these points, in view of the general finding, come before *this* court.

Mr. Justice CLIFFORD delivered the opinion of the court.

Underwriters in a policy of marine insurance undertake, in consideration of a certain premium, to indemnify the party insured against loss arising from certain perils of the sea, or sea risks to which the ship, merchandise, or freight of the insured may be exposed during a particular voyage or for a specified period of time. Long experience shows

---

* Within brackets, *supra*, 244.—REP.

that such a system is essential to commerce, as it tends to promote the spirit of maritime adventure by diminishing the risk of ruinous loss to which those who engage in it would otherwise be exposed. Losses of the kind cannot be prevented by any degree of human forecast or skill, but the system of insurance, as practiced among merchants, enables those engaged in such pursuits to provide themselves with indemnity against the consequences of such disasters. By such contracts either associated capital becomes pledged for such indemnity, or the loss is so distributed among different underwriters that the ultimate sufferers are not in general seriously injured. Indemnity is the great object of the insured, but the underwriter pursues the business as a means of profit.

On the first of March, 1869, the defendant subscribed a time policy of insurance in the sum of three thousand dollars, for a premium of twelve per cent. net, upon the schooner B. F. Folsom, her tackle, apparel, and other furniture, valued at thirty-five thousand dollars; in which policy it is recited that the insurance is to the plaintiff on account of whom it may concern, and in case of loss, to be paid in funds current in the city of New York; and the policy contains the clause following, to wit: "insured at and from the first day of January, 1869, at noon, until the first day of January, 1870, at noon," with liberty to the insured, if on a passage at the expiration of the term, to renew the policy for one, two, or three months, at the same rate of premium, provided application be made to the company on or before the expiration of the first term. Also "privileged to cancel the policy at the expiration of six months, *pro rata* premium to be returned for time not used, no loss being claimed." Prior to the date of the policy, to wit, on the sixth of January in the same year, the schooner set sail and departed from the port of Boston, bound on a voyage to the port of Montevideo, laden with an assorted cargo, and during the voyage she met with tempestuous weather, and on the thirtieth of the same month, by the force of the wind and waves was

wrecked, foundered, and sunk, and was wholly lost to the plaintiff. Seasonable notice of the loss was given to the defendants, and payment being refused the plaintiff brought an action of assumpsit to recover the amount insured. Service having been made the defendants appeared and pleaded the general issue, and the parties having in due form waived a trial by jury, went to trial before the court without a jury. Matters of fact were accordingly submitted to the court, and the court found that the defendants did undertake and promise the plaintiff in manner and form as he, the plaintiff, in his writ and declaration had alleged, and assessed damages for the plaintiff in the sum of three thousand three hundred and forty-eight dollars and twenty cents, and the court rendered judgment for the plaintiff for the amount so found. Exceptions were filed by the defendants, and they sued out a writ of error and removed the cause into this court.

By the terms of the act of Congress permitting issues of fact in civil cases to be tried and determined by the court without the intervention of a jury, it is provided that the finding of the court upon the facts may be either general or special, and that the finding shall have the same effect as the verdict of a jury.*

Where a jury is waived, as therein provided, and the issues of fact are submitted to the court, the finding of the court may be either general or special, as in cases where an issue of fact is tried by a jury; but where the finding is general the parties are concluded by the determination of the court, except in cases where exceptions are taken to the rulings of the court in the progress of the trial. Such rulings, if duly presented by a bill of exceptions, may be reviewed here, even though the finding is general, but the finding of the court, if general, cannot be reviewed in this court by bill of exceptions or in any other manner.† Facts

---

* 13 Stat. at Large, 501.

† Miller *v.* Insurance Co., 12 Wallace, 297; Norris *v.* Jackson, 9 Id. 125; Coddington *v.* Richardson, 10 Id. 516.

found by a jury could only be re-examined under the rules of the common law, either by the granting of a new trial by the court where the issue was tried or to which the record was returnable, or by the award of a *venire facias de novo* by an appellate court for some error of law which intervened in the proceedings.* Nothing, therefore, is open to re-examination in this case except such of the rulings of the court made in the progress of the trial as are duly presented by a bill of exceptions.† All matters of fact, under such a submission, must be found by the Circuit Court and not by the Supreme Court, as the act of Congress provides that the issues of fact may be tried and determined by the Circuit Court where the suit is brought. Inferences of fact must also be drawn by the Circuit Court, as it is the Circuit Court and not the Supreme Court which, by the agreement of the parties, is substituted for a jury.‡ None of these rules are new, as they were established by numerous decisions of this court long before the act of Congress in question was enacted.§ Propositions of fact found by the court, in a case where the trial by jury is waived, as provided in the act of Congress, are equivalent to a special verdict, and the Supreme Court will not examine the evidence on which the finding is founded, as the act of Congress contemplates that the finding shall be by the Circuit Court; nor is the Circuit Court required to make a special finding, as the act provides that the finding of the Circuit Court may be either general or special, and that it shall have the same effect as

---

* Parsons *v.* Bedford, 2 Peters, 448; 2 Story on the Constitution, § 1770.

† Copelin *v.* Insurance Co., 9 Wallace, 461; Basset *v.* United States, Ib. 40.

‡ Tancred *v.* Christy, 12 Meeson & Welsby, 323.

§ Bond *v.* Brown, 12 Howard, 254; Penhallow *v.* Doane, 3 Dallas, 102; Wiscart *v.* Dauchy, Ib. 327; Jennings *v.* Brig Perseverance, Ib. 336; Talbot *v.* Seeman, 1 Cranch, 38; Saulet *v.* Shepherd, 4 Wallace, 502; Faw *v.* Roberdeau, 3 Cranch, 177; Dunlop *v.* Munroe, 7 Id. 270; United States *v.* Casks of Wine, 1 Peters, 550; Hyde *v.* Booream, 16 Id. 176; Archer *v.* Morehouse, Hempstead, 184; Parsons *v.* Bedford, 3 Peters, 434; Craig *v.* Missouri, 4 Id. 427; United States *v.* King et al., 7 Howard, 853.

the verdict of a jury.* Where a case is tried by the court without a jury, the bill of exceptions brings up nothing for revision except what it would have done had there been a jury trial.† Tested by these considerations, it is clear that the exceptions of the defendants to the rulings of the court refusing to make any special finding, as requested by their counsel, may be overruled without any further remark.

Exception is also taken by the defendants to the refusal of the court to decide that the evidence introduced by the plaintiff in the opening was not sufficient to entitle the plaintiff to a verdict.

Having introduced the policy, the plaintiff proved by the master that the schooner, on the sixth of January prior to the date of the policy, departed on her voyage, and that she was lost at the time and by the means before stated. In addition to the incidents of the loss, he also proved the circumstances under which the master and crew were saved from the wreck and carried to the port of Bremerhaven, by the vessel which rescued them; that the master wrote to the owner by the first mail from that place after their arrival there, and that he was unable to use the telegraph, as he had no funds to prepay a telegram. Due notice of the loss and of the interest of the plaintiff having been admitted the plaintiff rested, and the defendants moved the court to decide that the evidence was not sufficient to entitle the plaintiff to a verdict, which the court refused to do.

Suppose the motion is regarded as a motion for a nonsuit, it was clearly one which could not be granted, as it is well-settled law that the Circuit Court does not possess the power to order a peremptory nonsuit against the will of the plaintiff.‡ Power to grant a peremptory nonsuit is not vested in a Circuit Court, but the defendant may, if he sees fit, at the close of the plaintiff's case, move the court to instruct

---

* Copelin *v.* Insurance Co., 9 Wallace, 461; Folsom *v.* Insurance Co., 9 Blatchford, 201.

† Norris *v.* Jackson, 9 Wallace, 125; Coddington *v.* Richardson, 10 Id. 516; Miller *v.* Insurance Co., 12 Id. 285.

‡ Elmore *v.* Grymes, 1 Peters, 469; Castle *v.* Bullard, 23 Howard, 172.

the jury that the evidence introduced by the plaintiff is not sufficient to warrant the jury in finding a verdict in his favor, and it is held that such a motion is not one addressed to the discretion of the court, but that it presents a question of law, and that it is as much the subject of exceptions as any other ruling of the court in the course of the trial.\* All things considered the court is inclined, not without some hesitation, to regard the motion as one of the latter character, and in that view it presents the question whether, by the terms of the policy, the risk was within it, as the proofs show that the loss occurred before the policy was issued.

Policies of insurance intended to have a retroactive effect, usually contain the words " lost or not lost," and the defendants contend that the policy in this case, inasmuch as it does not contain those words, does not cover the loss described in the declaration ; but it is well-settled law that other words may be employed in such a contract which will have the same operation and legal effect, and it appears that the policy in this case, by its express terms, was to commence on the first day of January, 1869, and to continue until the first day of January, 1870. Elementary writers and the decisions of the courts make it perfectly certain that the phrase " lost or not lost " is not necessary to make a policy retroactive. It is sufficient if it appear by the description of the risk and the subject-matter of the contract that the policy was intended to cover a previous loss. Contracts of the kind are as valid as those intended to cover a subsequent loss, if it appears that the insured as well as the underwriter was ignorant of the loss at the time the contract was made.†

Viewed in the light of these suggestions, it is quite clear

---

\* Schuchardt *v.* Allens, 1 Wallace, 370 ; Parks *v.* Ross, 11 Howard, 362 ; Bliven *v.* New England Screw Co., 23 Id. 433 ; Toomey *v.* Railway Co , 3 C. B., New Series, 150 ; Ryder *v.* Wombwell, Law Reports, 4 Exchequer, 39 ; Giblin *v.* McMullen, Law Reports, 2 Privy Council, App 385.

† Hammond *v.* Allen, 2 Sumner, 396 ; 1 Phillips on Insurance, § 925 ; 2 Parsons on Marine Insurance, 44 ; 1 Arnould on Insurance, 26 ; 3 Kent (11th ed.), 344 ; Hallock *v.* Insurance Co., 2 Dutcher, 268.

that it would have been error if the Circuit Court had decided as requested by the defendants, and that the decision made by the Circuit Court in denying the motion was correct.

Attempt was also made at the trial to set up the defence that the plaintiff concealed material facts from the defendants at the time the policy was granted, but the Circuit Court found that the charge was not sustained by the evidence, which is all that need be said upon the subject, as it is quite clear that the finding of the Circuit Court, where the trial by jury is waived, as in this case, is not the proper subject of review in the Supreme Court, to which it may be added, that if the rule were otherwise the court here would be compelled to come to the same conclusion as that reached by the Circuit Court.

Issues of fact, however, under such a submission, are to be tried and determined by the Circuit Court, and it is equally clear that the findings of the Circuit Court, even when special, cannot be reviewed by the Supreme Court, except for the purpose of determining whether the facts found are sufficient to support the judgment, as the express provision is that the finding of the Circuit Court in such a case shall have the same effect as the verdict of a jury.*

Exception was also taken to the ruling of the court in refusing to admit as evidence the application for insurance when tendered by the defendants in support of the defence of concealment.

Apparently it was offered to show that it did not state where the vessel was at that time or from what port she had sailed or on what voyage she was bound, but the court was of the opinion, and ruled, that inasmuch as the instrument contained no statement in respect to any one of those matters, and that its terms were exactly the same as those of the policy, the contents were immaterial to the issue, as the contents could have no tendency to show that the plaintiff, when he made the application, did not communicate to the

---

* Insurance Co. *v.* Tweed, 7 Wallace, 51; Generes *v.* Bonnemer, Ib. 564; Norris *v.* Jackson, 9 Id. 127; Flanders *v.* Tweed, Ib. 428; Dirst *v.* Morris, 14 Id. 490; Richmond *v.* Smith, 15 Id. 437; Bethel *v.* Mathews, 13 Id. 2.

defendants all the material facts and circumstances within his knowledge, and answer truly all questions put to him in regard to those several matters.* Evidently the burden of proof to establish such a defence is upon the party pleading it, and the court here is of the opinion that the ruling of the Circuit Court, as fully explained in the opinion given at the time, and in the opinion subsequently given denying the motion for new trial, was correct.†

Special findings of fact were requested by the defendants, and they excepted in numerous instances to the rulings of the court refusing to comply with such requests, all of which are overruled upon the ground that the finding of the Circuit Court upon the facts may be either general or special, as heretofore more fully explained.‡ Requests that the court would adopt certain conclusions of law were also presented by the defendants, in the nature of prayers for instruction, as in cases where the issues of fact are tried by a jury, which were refused by the Circuit Court, and the defendants also excepted to such refusals. None of these exceptions have respect to the rulings of the court in admitting or rejecting evidence, nor to any other ruling of the Circuit Court which can properly be denominated a ruling in the progress of the trial, as every one of the refusals excepted to appertain to some request made to affect or control the final conclusion of the court as to the plaintiff's right to recover. Such requests or prayers for instruction, in the opinion of the court, are not the proper subjects of exception in cases where a jury is waived and the issues of fact are submitted to the determination of the court.§ Exceptions are allowed to the rulings of the court in the progress of the trial, and the provision is that the review, if the finding is special, may also extend to the determination of the sufficiency of the facts found to support the judgment. Where the finding is gen-

---

* Same Case, 8 Blatchford, 170; Same Case, 9 Id. 202.

† Vandervoort *v.* Columbia Insurance Co., 2 Caines, 160; Insurance Co. *v.* Lyman, 15 Wallace, 670; Rawls *v.* American Mutual Life Insurance Co., 27 New York, 297.

‡ 13 Stat. at Large, 501.    § Dirst *v.* Morris, 14 Wallace, 490.

eral, as in this case, nothing is open to review but the rulings of the court in the progress of the trial, and as none of the last-named exceptions, which are the ones now under consideration, were of that class, they are all overruled.* Like a special verdict, a special finding furnishes the means of reviewing such questions of law arising in the case as respect the sufficiency of the facts found to support the judgment, but where the finding is general the losing party cannot claim the right to review any questions of law arising in the case, except such as grow out of the rulings of the Circuit Court in the progress of the trial, which do not in any proper sense include the general finding of the Circuit Court nor the conclusions of the Circuit Court embodied in such general finding, as such findings are in the nature of a general verdict and constitute the foundation of the judgment. No review of such a finding can be made here under a writ of error, unless it is accompanied by an authorized special statement of the facts, without imposing upon this court the duty of hearing the whole case, law and fact, as on an appeal in a chancery or in an admiralty suit, which would operate as a repeal of the provisions in the act of Congress, that issues of fact in such cases may be tried and determined by the Circuit Court, and would also violate that clause of the twenty-second section of the Judiciary Act, which prohibits this court from reversing any case " for any error in fact."†

Whether any ruling of the Circuit Court other than the rulings in admitting or rejecting evidence can properly be regarded " as rulings in the progress of the trial," within the meaning of that phrase in the act of Congress, it is not necessary in this case to decide, as it is clear that neither the general finding of the Circuit Court nor the conclusions of the Circuit Court as embodied in the general finding fall within that category.

JUDGMENT AFFIRMED.

---

* Dirst *v.* Morris, 14 Wallace, 490.          † 1 Stat. at Large, 85.