### DEXTER & CARPENTER, Inc., v. DAVIS, Agent, etc.

(Circuit Court of Appeals, Fourth Circuit. May 31, 1922.)

No. 1934.

1. **Eminent domain** ⬤➾123—**Owner of confiscated property entitled to "just compensation."**

    The owner of coal requisitioned for railroad use during government operation cannot be compelled to accept a price fixed by the government, but is entitled under the Fifth Amendment to "just compensation."

2. **Carriers** ⬤➾158(1)—**Value stipulated in bill of lading relates to risk of carriage only.**

    Limitations of value in an ordinary bill of lading have no relation to loss due to conversion of the property by the carrier.

**3. Carriers ⚖️158(1)—Statute imposing full liability for loss notwithstanding limitation not applicable to overseas shipments.**

The provision of Interstate Commerce Act, § 20, as amended (Comp. St. § 8604a), imposing on a carrier liability for the full loss or damage to interstate shipments, or shipments "to an adjacent foreign country," notwithstanding any limitation in the bill of lading, *held* not to apply to a shipment to a foreign country not adjacent.

**4. War ⚖️14—Government regulations for shipment of coal held not to affect essential nature of shipment.**

Under order of the Fuel Administrator of January 17, 1919, providing that all contracts for sale of coal should provide that the coal deliverable thereunder should be subject to requisition by the Fuel Administrator, and that in the absence of a government price such requisition should be "at the price at which such shipment has been consigned by the shipper thereof," where shipments were made to apply on foreign contracts, and the coal was requisitioned, the shipper is entitled to the foreign contract price, notwithstanding the fact that under government regulations the shipper was compelled to consign the coal to the Tidewater Coal Exchange for shipper's account.

**5. Appeal and error ⚖️850(3)—Refusal of requested findings held "special findings" for purpose of review.**

In an action tried to the court by written stipulation, refusal of findings requested by plaintiff on undisputed evidence constitute "special findings," within Rev. St. § 700 (Comp. St. § 1668), and when duly excepted to authorize the appellate court to determine the sufficiency of the facts found to support the judgment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Special Finding.]

Waddill, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action at law by Dexter & Carpenter, Inc., against James C. Davis, Agent, etc. Judgment for defendant, and plaintiff brings error. Reversed.

William B. Symmes, Jr., of New York City (Davis, Symmes & Schreiber, of New York City, on the brief), for plaintiff in error.

Duncan K. Brent, of Baltimore, Md. (Allen S. Bowie and Hugh L. Bond, Jr., both of Baltimore, Md., on the brief), for defendant in error.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

KNAPP, Circuit Judge. In September and October, 1919, Dexter & Carpenter, Inc., plaintiff below and herein so called, shipped from certain mines in West Virginia a large quantity of coal, aggregating 23,508.05 tons, over the Baltimore & Ohio Railroad to Baltimore, Md., for export. All this coal was confiscated for railroad use before arriving at destination, some of it prior to October 31st, but the greater portion on or after that date. Plaintiff was paid for the coal the cost to it at the mines, and this suit is brought to recover the difference between that amount and the "just compensation" which it claims as a constitutional right. In the court below, where by stipulation the case was tried without a jury, judgment was rendered for defendant, and plaintiff brings the case here on writ of error.

That the coal in suit was intended for export is not disputed. Indeed, counsel for defendant stated at the trial:

"In this case there is no suggestion on our part at all that Dexter & Carpenter were not trying all they knew how to get the coal abroad."

When this coal moved from the mines, the Baltimore & Ohio Railroad was under operation by the government, and coal for export could be shipped only on permits and in accordance with rules established by the Tidewater Coal Exchange. Rule 15 required the coal to be consigned to the Exchange for account of the shipping member, who received credit therefor in designated "pools"; and this credit was at once available to him for loading vessels or making deliveries at tidewater. At that time plaintiff had two contracts for the sale of export coal, one with G. & L. Beijer, Malmo, Sweden, for 15,000 tons of pool 33 coal, f. o. b. steamer at Baltimore, and one with the Netherlands government for 75,000 tons of pools 36 and 37 coal, c. i. f. Rotterdam, and the larger part of the confiscated coal was intended to apply on those contracts, which were then unfilled. For this portion plaintiff claims the contract price. There was also a contract with the Coal Trading Association of Rotterdam for a quantity of pool 34 coal, of which 2,375.60 tons were confiscated, but which contract was afterwards filled. For this coal plaintiff claims $4.31 a gross ton, the government price at the mine plus the export allowance, which is slightly less than the market value shown by the testimony.

[1] As to the coal confiscated prior to October 31st, the defense relied upon is that plaintiff's compensation is fixed and limited by the following provision in the tariff under which the coal was transported:

"The amount of any loss or damage for which the carrier is liable shall be computed on the basis of the value of the property at the time and place of shipment."

As plaintiff was paid on that basis the question to be determined is whether the tariff provision is controlling. The confiscation of plaintiff's coal was the taking by the government of private property for public use, and that may not be done, under the Fifth Amendment, "without just compensation." Even if it be conceded that the phrase "loss or damage" includes confiscation, which seems at least doubtful, it is manifest that a tariff provision cannot serve to destroy or diminish a constitutional right. We see no escape from the conclusion that plaintiff, whose coal was taken for government use, is entitled to recover therefor on the basis guaranteed by the Constitution. Monongahela Navigation Co. v. United States, 148 U. S. 312, 13 Sup. Ct. 622, 37 L. Ed. 463; Filbin Corporation v. United States (D. C.) 265 Fed. 354; National City Bank v. United States (D. C.) 275 Fed. 855; United States v. New River Collieries Co. (C. C. A.) 276 Fed. 690. In the last-named case the United States requisitioned a large quantity of coal belonging to the Collieries Company, and tendered payment at a price named by the Navy Department. This was refused and suit brought. The court says:

"At the trial, both parties offered evidence in support of what they respectively regarded as the true measure of compensation, fully realizing that in providing that compensation be made for private property taken for public

use the Congress intended compensation of a character that would conform with the 'just compensation' prescribed, in like event, by the Fifth Amendment to the Constitution. United States v. Cohen Grocery Co., 255 U. S. 88."

National City Bank v. United States, supra, was also a suit under the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e—3115⅛kk, 3115⅛l—3115⅛r). The opinion of Judge Mayer, in which numerous authorities are cited, leaves little to be said. It is sufficient to quote the following:

"To carry out the purposes of the act, the President could make regulations in the way, inter alia, of fixing prices in ordinary trading or commercial transactions; but when the United States itself took foods—i. e., property—it was bound to award just compensation, and what is just compensation under the Constitution is determined by the same legal principles in war as in peace."

[2] The same measure of damages would apply if the railroad company itself had converted the coal. The limitations of value in the ordinary bill of lading have no application to loss due to the conversion of the property by the carrier. 4 R. C. L. pp. 792, 793; Adams Express Co. v. Berry, 35 App. D. C. 208, 31 L. R. A. (N. S.) 309, and note; Ann. Cas. 1913D, 990; Central of Georgia Ry. Co. v. Chicago Portrait Co., 122 Ga. 11, 49 S. E. 727, 106 Am. St. Rep. 87.

[3] We agree with defendant that the Cummins Amendment to the Carmack Amendment (paragraph 11, section 20 of the Act to regulate commerce [Comp. St. § 8604a]) has no application, because, in a word, the amended section is confined to transportation which is wholly interstate, "or from any point in the United States to * * * an adjacent foreign country," while the transportation here in question was to a foreign country not adjacent. The Interstate Commerce Commission has so held in Re Cummins Amendment, 33 Interst. Com. Com'n 682, 693, and so has the Court of Appeals of Maryland, in Fahey v. Baltimore & O. R. Co., 139 Md. 161, 114 Atl. 905.

[4] As to the coal appropriated on or after October 31st, the defense set up is that plaintiff is entitled only to the mine price, which it has received, because of certain orders of the United States Fuel Administrator. It appears and is conceded that all prior orders were suspended on January 31, 1919, except those mentioned in the order of that date. In consequence, the only order here involved which remained in force at the time plaintiff shipped its coal was the so-called "contract order" of January 17, 1919. That order required every contract for the sale of coal to provide that the coal deliverable thereunder should be subject to requisition by the Fuel Administrator, and "that such requisition shall be made at the going government price in effect at the date of shipment," or, if on that date there was no government price, "then at the price at which such shipment has been consigned by the shipper thereof." When the coal in suit was shipped from the mines there was no government price in effect, and defendant's brief admits "that if the coal had moved on a European contract, and if the particular coal which was diverted had been consigned to a European consignee by the shipper thereof, the plaintiff would be entitled to such European contract price." But "the price at which such shipment has

been consigned by the shipper thereof," which was required to be included in the contract of sale, clearly means the selling price of the coal under that contract. And this meaning of the provision is not deprived of application, nor is the essential character of the shipment affected, by the circumstance that the coal was consigned, as it had to be, to the Tidewater Coal Exchange for plaintiff's account.

To hold otherwise would be to measure the transaction, not by its substance and evident intent, but by the particular form which superior authority compelled it to take. Under the conditions of modern commerce cases of this sort cannot fairly be decided on the identity of particular bushels of wheat or tons of coal. The test is: Did the possession of or contract for a certain quantity of coal permit the sale of a like quantity from a general place of storage or supply, like the terminal of this exchange? If it did, then the conversion of the coal in possession or under contract would defeat the sale from such place of storage or supply, and the value of the coal in that place for its intended purpose would be the measure of just compensation. It would seem plainly inequitable to allow the government to evade liability in this case on the sole ground that, under the rules of the exchange, plaintiff could not consign its coal directly to the foreign buyers with whom it had contracts, but was required to make the exchange the consignee; and especially so in view of the fact, which the testimony indicates, that the exchange itself was virtually controlled by the Director General of Railroads. In short, we are of opinion that plaintiff's coal was moving on foreign contracts, and that the contract price in each case was the price at which its shipments were "consigned by the shipper thereof."

The order of January 18, 1919, which was restored by the order of October 31st, has no application, because there was no sale to the government and no request by the Fuel Administrator for a cancellation of the contracts. We therefore conclude, without expanding the argument, that plaintiff is entitled to recover its entire claim under the common-law rule laid down in the recent case of Chicago, M. & St. P. Ry. Co. v. McCaull-Dinsmore Co., 253 U. S. 97, 40 Sup. Ct. 504, 64 L. Ed. 801, as follows:

"The rule of the common law is not an arbitrary fiat, but an embodiment of the plain fact that the actual loss caused by a breach of contract is the loss of what the contractee would have had if the contract had been performed, less the proper deductions."

The evidence shows that plaintiff did not fill its foreign orders, and so lost the profit it would have made on this coal, if the government had not prevented its delivery. It also shows that the government price for export coal was somewhat in excess of the contract price which plaintiff claims as the basis of damages. On this record the measure of just compensation is the contract price for so much of the coal as was intended to apply on the Beijer and Netherlands contracts, and the fair market value for the balance.

[5] With reference to the position taken in the dissenting opinion, a position not taken by defendant in brief or oral argument, it seems sufficient to say that the facts established by plaintiff's proofs are wholly undisputed, no evidence having been offered by defendant; that

on those proofs, recited in adequate and pertinent prayers, the trial court was asked to find and hold that plaintiff was entitled to recover the amount sued for; that these prayers were all rejected and exceptions duly noted; and that such adverse rulings are assigned as error. In our judgment this was the appropriate method of bringing up for review the question of law involved, namely, whether the court was right in deciding for defendant; that is to say, whether the evidence warrants the conclusion. The refusals to find as requested in the several prayers constitute the "special finding" provided for in Rev. St. § 700 (Comp. St. § 1668), and authorize a "determination of the sufficiency of the facts found to support the judgment." This subject is discussed at length and numerous authorities cited in the recent case of City of Cleveland v. Walsh Construction Co. (C. C. A.) 279 Fed. 57. The court says (page 61):

"If there was a written waiver," which is the case at bar, "a review may be had not only of all questions inherent in the primary record, but also of all the rulings on the trial which were imported into that record by the bill of exceptions, and which were properly challenged; but if the waiver is not written the review brings up only the primary record. In the latter class, as in the former, special findings of fact by the judge became a part of the record; and whether the findings support the judgment will be considered by the reviewing court, even without exception taken. Whether there was error as to admitting evidence, or as to the burden, or whether there was no evidence to support a particular finding, or was no justification for refusing it, or any evidence to support the judgment—all should be deemed rulings on the trial, and if properly challenged can be reviewed, but only if section 700 has become applicable by a written stipulation."

The judgment will be reversed, and a new trial awarded.
Reversed.

WADDILL, Circuit Judge (dissenting). I am unable to concur with my Brethren in the more essential features of this case, and because of its importance, feel that I should state briefly some of the reasons influencing me:

First. This is an action at law, brought to recover for losses alleged to have been sustained by the plaintiff through confiscation, or diversion, of certain coal intrusted by it to the defendant, for shipment over the lines of the Baltimore & Ohio Railroad, then being operated by the latter as Director General of Railroads.

The case was tried by the court without a jury, under stipulation in writing of parties, by counsel, pursuant to section 649 of the Revised Statutes (Comp. St. § 1587), with the result that a verdict was rendered by the court in favor of the defendant, and judgment entered thereon, from which action this writ of error was sued out.

Section 649 provides that the findings of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury, and section 700 (Comp. St. § 1668) provides that, when an issue of fact in any civil cause is tried by the court without the intervention of a jury, pursuant to section 649 aforesaid, the rulings of the court in the progress of the trial of the cause, if excepted to at the time, and duly preserved by bills of exception, may be reviewed by

the Supreme Court upon writ of error or upon appeal, "and when the finding is special the review may extend to the determination of the sufficiency of the facts found to support the judgment."

In this case, there were no special findings of fact, but merely a general finding that the plaintiff was not entitled to recover, on which judgment was entered in favor of the defendant, and against the plaintiff. No criticism of the rulings of the court in the progress of the trial is found, and the sole question presented for consideration is the effect of the finding of the district court on the facts as above recited. The most favorable view of the case that can be taken by the plaintiff, which this record will not warrant, is that there is no evidence to support the finding of facts, and judgment of the court thereon, and that this court can pass upon that question.

The recent case of United States v. Fidelity & Guaranty Co., 236 U. S. 512, 527. 35 Sup. Ct. 298, 59 L. Ed. 696, sustains this view, as does Dooley v. Pease, 180 U. S. 126, 131, 21 Sup. Ct. 329, 45 L. Ed. 457. In these cases, there was a special finding of facts, which under the express terms of section 700, Revised Statutes, enabled the court to review the question of the sufficiency of the evidence to support the judgment, and it will be found that the cases so holding are generally those in which there was such special finding of fact, or agreement as to facts, or were based upon verdicts of juries. In a case where there was no special finding of facts, like the one at bar, the court cannot consider the facts at all, even to determine whether there is any evidence to support the findings. Miller v. Life Insurance Co., 12 Wall. 285, 295. 20 L. Ed. 398; Insurance Co. v. Folsom, 18 Wall. 237, 248, 21 L. Ed. 827; Cooper v. Omohundro, 19 Wall. 65, 69, 22 L. Ed. 47; Stanley v. Supervisors, 121 U. S. 535, 547, 7 Sup. Ct. 1234, 30 L. Ed. 1000; Lehnen v. Dickson, 148 U. S. 71, 72, 73, 13 Sup. Ct. 481, 37 L. Ed. 373.

In Insurance Co. v. Folsom, supra, 18 Wall. 237, 21 L. Ed. 827, Mr. Justice Clifford, speaking for the Supreme Court, at page 248 of 18 Wall. (21 L. Ed. 827), said:

"Where a jury is waived, as therein provided, and the issues of fact are submitted to the court, the finding of the court may be either general or special, as in cases where an issue of fact is tried by a jury; but where the finding is general the parties are concluded by the determination of the court, except in cases where exceptions are taken to the rulings of the court in the progress of the trial. Such rulings, if duly presented by a bill of exceptions, may be reviewed here, even though the finding is general, but the finding of the court, if general, cannot be reviewed in this court by bill of exceptions or in any other manner."

In Stanley v. Supervisors, supra, 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. Ed. 1000, Mr. Justice Field, speaking for the Supreme Court, at page 547 of 121 U. S., at page 1238 of 7 Sup. Ct. (30 L. Ed. 1000), said:

"Only rulings upon matters of law, when properly presented in a bill of exceptions, can be considered here, in addition to the question, when the findings are special, whether the facts found are sufficient to sustain the judgment rendered. This limitation upon our revisory power on a writ of error in such cases, is by express statutory enactment"—citing section 700 of the Revised Statutes.

In Lehnen v. Dickson, supra, 148 U. S. 71, 13 Sup. Ct. 481, 37 L. Ed. 373, Mr. Justice Brewer, speaking for the Supreme Court, on pages 72 and 73 of 148 U. S., at page 482 of 13 Sup. Ct. (37 L. Ed. 373), said:

"The first matter to be considered is whether the record is in such shape as to present any question for determination. The case was tried by the court without a jury, and the journal entry shows simply a general finding that the defendant is guilty in manner and form as charged in the complaint, the amount of damages sustained by the plaintiff, and the value of the monthly rents and profits, and thereon the judgment for restitution of the premises, double damages and double rent. There is no special finding of facts, and no agreed statement of facts. Obviously, therefore, inquiry in this court must be limited to the sufficiency of the complaint and the rulings, if any be preserved, on questions of law arising during the trial. * * * Further, section 700 provides that 'when an issue of fact in any civil cause in a Circuit Court is tried and determined by the court without the intervention of a jury, according to section 649, the rulings of the court in the progress of the trial of the cause, if excepted to at the time, and duly presented by a bill of exceptions, may be reviewed by the Supreme Court upon a writ of error or upon appeal; and when the finding is special, the review may extend to the sufficiency of the facts found to support the judgment.' Under that, the rulings of the court in the trial, if properly preserved, can be reviewed here, and we may also determine whether the facts as specially found support the judgment; but if there be no special findings, there can be no inquiry as to whether the judgment is thus supported."

In Swift v. Jones, a decision of this court, 145 Fed. 489, 492, 76 C. C. A. 253, 256, after quoting the three sections, 648, 649, and 700, of the Revised Statutes (Comp. St. §§ 1584, 1587, 1668), it is said that:

"These three sections constitute the whole federal law upon the subject, so far as this case is concerned, where the facts were ascertained without the intervention of a jury, and by the last-named section, the method of the correction of errors upon writ of error is expressly confined to the rulings of the court in the progress of the trial in the cause, if excepted to at the time, and duly preserved by bill of exception; and upon such writ of error the facts can only be inquired into where the finding is special, as distinguished from a general finding by the trial judge. Such sections constitute within themselves a perfect and complete system for the guide and government of the federal courts, and ought not to be departed from."

The decision of the majority in this case fails to give effect to the findings made by the District Court, with the result that they substitute their own in lieu thereof. This situation can be the better appreciated, when it is understood that the plaintiff sued to recover an alleged balance due it of $23,168.11. The District Court upon full consideration of the evidence adduced before it, decided that nothing was due the plaintiff, and that no recovery could be had, and entered judgment for the defendant. This court finds that the plaintiff is entitled to recover its entire claim. It is true that a new trial is awarded, but upon the findings of the court, that the plaintiff is entitled to recover as above stated, such new trial will be a matter of form only, and can result but one way.

Second. The opinion by the majority that the amount of plaintiff's recovery should be arrived at upon the same basis that damages are awarded for private property taken by the government for public use under the Constitution, is more important than what may be the outcome of this particular case. The majority cite Monongahela v.

United States, 148 U. S. 312, 13 Sup. Ct. 622, 37 L. Ed. 463, Filbin Corporation v. United States (D. C.) 265 Fed. 354, National City Bank v. United States (D. C.) 275 Fed. 855, and United States v. New River Collieries Co. (C. C. A.) 276 Fed. 690.

I cannot bring myself to believe that the cases referred to, and the principles involved in them, have any application here. They all involve the liability of the government for private property taken by it for public use, and the measure of its liability, which latter may be said to be fairly well settled. Some of the cases apparently express a more liberal view than others; but all are based upon the general proposition that a citizen's property can only be acquired by the government for public use, upon payment of just compensation therefor, and what is just compensation necessarily depends upon the facts and circumstances of each particular case. To illustrate: The Monongahela River Case, supra, was a condemnation proceedings on the part of the government, to condemn locks in the river, in furtherance of a public improvement. In that case, what may be termed a liberal view of the compensation to be allowed, is taken. The cases of Filbin Corporation v. United States, National City Bank v. United States, and United States v. New River Collieries Co., supra, were each cases of property taken by the government for its purposes in connection with the war, under the Lever Act of August 10, 1917 (40 Stat. 276), section 10 of which act in terms provided for the President's taking over the property of a citizen, fixing the valuation therefor, and, if the same was not accepted, then to pay three-fourths of the award, and allow the citizen to sue for the remainder. These were all cases of acquisition of property by the government for its own uses.

We have here no such case. This is not a suit against the government, nor a suit by the government against a citizen, in which is involved any act or thing done by the government. The government is not a party, nor bound by anything done in the case. On the contrary, it is one in which during his operation of the Baltimore & Ohio Railroad, as Director General or Agent charged with the control and operation thereof, it was found necessary to use or confiscate certain coal belonging to the plaintiff then in course of transit over the road, and the suit was brought to recover for the loss sustained. The taking or confiscation of such property is usual in the operation of all railroads, and the plaintiff is entitled to recover as it would be in any ordinary case, and his damages and losses are to be ascertained as in any other like case; the operator being placed in precisely the same position that the owners of the road would be, if they had been operating it. This is particularly true as to the measure of damages, as the defendant, operating the road in behalf of the public, and of the road itself, during the existence of a great war, should not be placed in a more unfavorable position than the owner of the property would be under like conditions. This becomes the more evident because, during the war period, vast powers were conferred on the Director General in connection with the operation of railroads and the sale and transportation of coal. The right to confiscate coal, and to fix the price at which the same should be paid for, was expressly reserved; and the whole coal

trade was subject at the time to governmental rules and regulations, as it was only by sufferance of the government, and subject to its regulations, that the plaintiff could carry on its business at all.

The defendant paid the plaintiff what he believed to be his full liability for the coal taken, viz. $79,802.86. The lower court, upon full consideration of the facts, has determined that there is no further liability against the defendant, and my conclusion is that, under the law, the District Court's action should be affirmed.