OGBURN et al. v. WARD COUNTY IRR. DIST. NO. I. (No. 1686.)*

(Court of Civil Appeals of Texas. El Paso. Dec. 18, 1924. Rehearing Denied Dec. 31, 1924.)

1. Waters and water courses ⚮231—Arbitrary and gross overvaluation ground for setting aside assessment by direct proceeding.

Complete Tex. St. 1920, or Vernon's Ann. Civ. St. Supp. 1922, arts. 5107—25 to 5107—27, require property to be assessed at its full value and no more, and, though ordinarily courts will not revise value fixed by board of equalization, yet, where board has arbitrarily and grossly overvalued property and discriminated against owner, such assessment is regarded as fraudulent, and may be set aside by direct proceeding.

2. Waters and water courses ⚮231—Arbitrary and grossly excessive assessment held fraudulent.

Assessment of lands within irrigation district by zones upon arbitrary valuation for three classes of land without regard to actual value of particular lands assessed, which were grossly overvalued, and intentional undervaluation of personal property throughout district, held a fraud on the taxpayer.

3. Waters and water courses ⚮231—Property owner not appearing before board of equalization and objecting without remedy for excessive assessment.

Where owner of lands in irrigation district made no return of his property for assessment, as required by Complete Tex. St. 1920 or Vernon's Ann. Civ. St. Supp. 1922, art. 5107—25, and did not appear before board of equalization and object to assessment, as authorized by articles 5107—26 to 5107—32, 5107—39, he has no remedy for relief from grossly excessive assessment; overvaluation not being jurisdictional defect.

4. Waters and water courses ⚮231—Owner's failure to seek relief from assessment from board of equalization not excused by assessor's premature preparation of assessment lists.

Property owner, seeking to avoid irrigation district assessment as fraudulent and excessive, cannot avoid effect of his failure to appear before board of equalization and object, as a bar to relief, merely because assessor pre-

---

⚮For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted February 18, 1925.

pared lists for board of equalization prior to expiration of time within which owner could make return, where owner made no return whatever.

**5. Waters and water courses ⊂⊃231—Owner not rendering property to assessor cannot object to want of notice of assessment by board of equalization.**

Owner of property in irrigation district, who made no complaint to board of equalization of assessment under Complete Tex. St. 1920, or Vernon's Ann. Civ. St. Supp. 1922, arts. 5107—25 to 5107—32, 5107—39, cannot complain that he received no notice of action of board; he not having rendered his property to assessor, and being charged by law with notice that board would appraise his property.

**6. Trial ⊂⊃105(5)—Secondary evidence admissible where not objected to and sufficient to support findings.**

In proceeding by irrigation district to collect delinquent taxes, publication of delinquent list *held* sufficiently shown by testimony by tax assessor, received without objection, that delinquent list was published in newspaper; such testimony, though not best evidence, being competent and admissible when no objection made, and there being nothing to show it to be hearsay.

**7. Waters and water courses ⊂⊃231—Statutory provision for mailing of delinquent notices not applicable.**

Complete Tex. St. 1920, or Vernon's Ann. Civ. St. Supp. 1922, art. 7687a, relating to mailing of delinquent tax notices, has no application to delinquent taxes levied by irrigation district; notification by publication of the latter being provided by article 5107—44.

**8. Appeal and error ⊂⊃218(2)—Errors in submission of issues, not objected to below, held waived.**

Alleged errors in issues submitted to jury, not objected to on trial, under Rev. St. art. 1971, are waived.

### On Rehearing.

**9. Appeal and error ⊂⊃835(2)—Assignment of error raised for first time on motion for rehearing too late.**

A ground of error not presented in court below nor on original hearing on appeal comes too late when raised for first time on motion for rehearing.

Appeal from District Court, Ward County; Chas. Gibbs, Judge.

Suit by Ward County Irrigation District No. 1 against J. W. Ogburn and others to recover taxes, penalty, and costs, and for foreclosure of lien. Judgment for plaintiff, and defendants appeal. Affirmed.

H. G. Russell, of Pecos, and John B. Howard, of El Paso, for appellants.

Birge Holt, of Barstow, for appellee.

HIGGINS, J. This suit was brought by the appellee, Ward County Irrigation District No. 1, a water improvement district for irrigation purposes, incorporated under the laws of this state against appellant Ogburn, the owner of 466 acres of land situate in the district, to recover taxes assessed against the land for the years 1917 to 1922, inclusive, together with interest, penalties, and costs, and for foreclosure of lien.

The defendant, in addition to a general denial, answered as follows:

"Defendant alleges that the plaintiff has not equalized said property as provided by law; that said property was not assessed by competent authorities; that a list of the delinquent taxes for the years complained of were not published as provided by law. That a legal notice of said delinquency was not issued to defendant; that a list of said delinquent taxes for said years has not been compiled and no delinquent tax record is kept by said district.

"Fifth.

"Defendant further says that plaintiff's cause of action, if any, accrued over two years before this suit, is barred by the two-year statute of limitation, which is here now pleaded in bar thereof.

"Sixth.

"Defendant further alleges that in assessing his land for taxes the tax collector did not assess same at its actual value, but knowingly assessed said land at over two times its actual value, and that the pretended board of equalization for said district likewise assessed said land for over two times its actual value and approved the assessment so made with knowledge that said assessment was excessive and was over two times the actual value and the cash market value of defendant's land, which is not in excess of $5 per acre.

"Seventh.

"That said tax is not equal or uniform, that defendant's land is assessed at two times its actual value, but the other lands in said district, including lands belonging to A. N. Edwards and E. P. Nelson, are assessed at their cash market value and actual value; that the personal property in said district, including the milk cows and horses belonging to the plaintiff directors, are assessed at their actual value, with the result that plaintiff is attempting to force this defendant to pay tax at a disproportionate and unequal rate, and same is not uniform.

"Wherefore defendant prays judgment that plaintiff take nothing and defendant go hence with his cost, and for such other and further relief in law or equity, to which he be justly entitled."

The question of limitation was eliminated by the plaintiff's dismissal as to the taxes for the years 1917 and 1918.

The court submitted this issue:

"Were the defendant's lands assessed for taxation on the same basis with reference to actual values as all other taxable properties in the district in question?"

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

This was answered in the affirmative. Two other issues were submitted, but were not answered, as the jury was instructed to answer same in the event only the first issue was answered in the negative. Upon this finding judgment was rendered in favor of the plaintiff for $2,110.10, being the amount of taxes, interest, penalties, and costs for the years 1919 to 1922, both inclusive, with foreclosure of lien, and Ogburn appeals.

It is, in effect, first insisted by the appellant that his land has been arbitrarily, grossly, and fraudulently overvalued by the tax assessor and board of equalization of the district under a system of valuation adopted by them, and that he has been discriminated against in such valuation, particularly as compared with personal property in the district.

Upon this phase of the case the evidence in its material features is undisputed and substantially as follows: For the purpose of land valuation the district has been divided into zones. The first embraces all land within a radius of one and one-half miles of the center; the second embraces all land outside the first zone and within a radius of three and one-half miles of the center; the third embraces all other land in the district. In the various zones all land planted in fruit and alfalfa is designated as first class; all in cotton, feed, or grain as second class; all uncultivated land as third class. Beginning in 1922 a fourth class was added, which consisted of land unfit for cultivation. Ogburn's land is all in the third zone. Apparently, without reference to improvements or any other consideration except the use to which the land is devoted and the zone in which it is situate, arbitrary valuations are fixed upon the land as follows: $135 per acre for first class land; $96 per acre for land of the second class; land of the third class at $67 per acre. More than 300 acres of Ogburn's land was uncultivated, and about 200 acres thereof was impregnated with alkali, which rendered it unfit for any purpose except grazing. During the years 1919, 1920, and 1921 this uncultivated land was valued at $67 per acre. In 1922 there were 266 acres of the uncultivated land which was valued at $7.50 per acre. During the years indicated the balance of Ogburn's land was classified in part as first class and part as second class, and valued accordingly. The assessor of the district testified that in valuing Ogburn's land he paid no attention to its real value, but valued it according to its classification under the plan adopted. He said:

"I took into consideration solely whether it was in class 1, 2, or 3, or in zone 1, 2, or 3. * * * In other words, in making up these tax renditions I did not rely upon anything except that schedule, I paid no attention to the values of the land."

According to his own testimony the uncultivated land belonging to Ogburn did not exceed $7.50 per acre in value, and there are a number of witnesses who placed it at $2 per acre. Several witnesses testified with reference to the value of the first and second class land owned by Ogburn, and placed its value at from $35 to $50 per acre. Appellee offered no evidence to the contrary. The undisputed evidence further shows that all personal property in the district is assessed at one-half its real value. It was shown by the assessor's testimony that $10,000 worth of personal property belonging to the Hillside Irrigation Company was assessed at $5,000.

[1] It is apparent that Ogburn's land, in part at least, has been arbitrarily valued by the taxing authorities at figures grossly in excess of its market or real value. The plain import of articles 5107—25 and 5107—27 (Complete Texas Statutes 1920) is that property is to be assessed at its "full value" and no more. We recognize that ordinarily the courts will not revise the action of a board of equalization in the valuation which it places upon property, but it is well settled by the decisions of this state that by appropriate action the taxpayer can obtain relief in the courts where the board has arbitrarily and grossly overvalued his property and discriminated against him. In such cases the action of the board is regarded as a fraud upon the taxpayer, and subject to be set aside by direct proceeding. Lively v. Railway, 102 Tex. 545, 120 S. W. 852; Holland v. Johnson, 17 Tex. Civ. App. 210, 43 S. W. 71; Power v. Andrews (Tex. Civ. App.) 253 S. W. 870; Brown v. Bank (Tex. Civ. App.) 175 S. W. 1122; City of Sweetwater v. Baird, 102 Tex. 545, 120 S. W. 854.

[2] The record in this case discloses an arbitrary gross overvaluation of at least a part of the land and a deliberate undervaluation of the personal property in the district. This was a fraud upon the taxpayer, and under the authorities above cited this ordinarily would subject the action of the board to review by the courts in an appropriate action for that purpose. But for the reason to be now stated it is not available as a defense in the present action.

[3] It is the duty of the assessor to assess all taxable property in the district, real, personal, and mixed, upon blanks to be provided by the directors of the district, and to each assessment there shall be attached an affidavit by the owner or his agent rendering the same; "and in addition to all such assessments or renditions made by the owner or agents of such property, the tax assessor shall make out similar lists of all property not rendered for taxation in such districts that is subject to state and county taxation therein. Each and every person, partnership or corporation owning taxable property in

such district shall render same for taxation to the assessor when called upon so to do, and if not called upon by the assessor, the owner shall on or before June 1 of each year nevertheless render for taxation all property owned by him in the district subject to taxation. Article 5107—25 R. S.

Article 5107—26 reads:

"The directors for such district created under the provisions of this act shall, at their first meeting, or as soon thereafter as practicable, and annually thereafter, appoint three commissioners, each being a qualified voter and resident property owner of said district, who shall be styled the 'board of equalization,' and at the same meeting the same board of directors shall fix the time for the meeting of such board of equalization for the first year; and said board of equalization shall convene at the time fixed by the directors to receive all assessment lists or books of the assessor for said district for examination, correction, equalization, appraisement and approval, and at all meetings of said board the secretary of the board of directors shall act as secretary thereof and keep a permanent record of all the proceedings of said board of equalization."

Articles 5107—28 to 5107—32 read:

"Art. 5107—28. The board of equalization herein provided for shall cause the assessor to bring before them, at the time fixed for the convening of said board, all the assessment lists or books of the assessor of said district for their examination, that they may see that each and every person has rendered his property at its full value; and said board shall have power to send for persons and papers to swear and qualify persons who testify, to ascertain the value of such property, and if they are satisfied it is too high, they shall lower it to its proper value; and if too low they shall raise the value of such property to a proper figure. Said board shall have power to correct any and all errors that may appear on the assessor's lists or books, and shall have further authority to add any and all property to said lists of inventories that may have been omitted therefrom.

"Art. 5107—29. The board of equalization shall equalize, as near as possible the value of all property situated within said district, having reference to the location of said property and the improvements thereon situated. Any person may file with the said board at any time before the final action of said board, a complaint as to the assessment of his or any other person's property, and said board shall hear said complaint, and said complainant shall have the right to have witnesses examined to sustain said complaint as to the assessment of said property, or as to a failure to render any property owned by any person, partnership or corporation situated within said district subject to taxation which has not been properly assessed.

"Art. 5107—30. The assessor for such district, at the same time that he delivers to said board his lists and books, shall also furnish to said board a certified list of the names of all persons who either refuse to swear to, or to sign, the oath or affirmation as required by this law, together with the list of the property of such persons situated within said district who have failed or refused to list their property, as made, by him through other information, and said board shall examine the list and appraise the property so listed by the assessor.

"Art. 5107—31. In all cases where the board of equalization shall find it their duty to raise the value of any property appearing on the lists or books of the assessor, or to add property omitted therefrom, they shall, after having fully examined such lists or books, and corrected all errors appearing therein, adjourn to a day not less than ten nor more than fifteen days from the date of adjournment, such day to be fixed in the order of adjournment, and shall cause the secretary of said board to give a written notice to the owner of such property, or to the person rendering same, of the time to which said board may have adjourned, and that such owner or person may at that time appear and show cause why the value of such property should not be raised, which notices may be served by depositing the same, properly addressed and postage paid, in any post office within the county.

"Art. 5107—32. The board of equalization shall meet at the time specified in said order of adjournment and shall hear all persons the value of whose property has been raised; and if said board is satisfied they have raised the value of such property too high, they shall lower the same to its proper value; and said board of equalization, after they have finally examined and equalized the value of all the property on the assessor's lists or books or that may have been placed thereon by said board of equalization, shall approve said lists or books and return them, together with the lists of unrendered property to the assessor that he may make up therefrom his general rules as required by this act; and when said general rolls are so made up the board shall immediately reconvene to examine said rolls and approve the same if found correct; and the action of the board at the meeting last provided for in this article shall be final and shall not be subject to revision by said board or by any other tribunal thereafter."

Article 5107—39 reads:

"The board of equalization, after the first year, shall convene annually on the first Monday in June of each year to receive all of the assessment lists or books of the assessor of said district for examination, correction, equalization, appraisement and approval, and for the addition thereto of any property found to be unrendered in said district, and shall complete and deliver said lists and rolls to the assessor and collector by the third Monday in July of said year, and the said assessment rolls shall be completed by the assessor and approved by the board of equalization, and returned to said assessor and collector by the first Monday in October of each year after the first assessment as hereinbefore provided."

It is shown that Ogburn never rendered his property to the assessor, and in March of each year the assessor prepared a list of Ogburn's property upon what appears to be a regular inventory blank, and submitted the same to the board of equalization at its first

meeting, which approved the same, and the property and valuations thus approved were extended upon the general tax roll. There is nothing to show that Ogburn ever appeared before the board of equalization or made any protest against the valuations placed upon his property or upon that of any other person. The listing by the assessor of Ogburn's property for the year 1919 is typical of the other years, and is as follows:

and I compared it with the roll from the lists submitted to me by the board of equalization. * * * I extended the taxes according to the valuation given me by the board of equalization and the rate submitted to me by the directors. * * * This is my assessment of this land for each of these years that was unrendered by the owner. * * * The board of equalization did not make any changes in these assessed valuations. They accepted them at the same valuation as assessed. * * *

"Inventory of Property.

"Owned by J. W. Ogburn and Rendered for Assessment of Taxes for the Year 1919 by ——— to J. H. Miller, Assessor of Ward County Irrigation District No. 1, Ward County, State of Texas.

Real Estate.

| Abstract | Block | Sec. | W. T. Grantee. | Zone. | Class. | Acres. | Value per Acre. | Amount. | Total. |
|---|---|---|---|---|---|---|---|---|---|
| 507 | 33 | 32 | 3 to ——— | 3 | 1 | 60 | $135.00 | $ 81.00 | |
| | | | 14 | 3 | 2 | 85 | 96.00 | 81.60 | |
| | | | | 3 | 3 | 321 | 67.00 | 215.07 | |
| | | | Imp. | | | | | 2.00 | |
| | | | 145 | | | 466 | | 379.67 | |

Total value of lands.................................................................................. 379.67
Total value of pers. prop........................................................................... ———

Total ................................................................................................ 379.67

"The State of Texas, County of Ward.

"I, J. H. Miller, do solemnly swear or (affirm) that the above inventory rendered by me contains a full, true and complete list of all taxable property owned or held by me in Ward County irrigation district No. 1, in this county, subject to taxation therein, and personal property not in this district subject to taxation in this irrigation district by the laws of this state, on the 1st day of January, A. D. 1919, and that I have true answers made to all questions propounded to me touching the same, so help me God.

"Subscribed and sworn to before me this 20 day of Mar., 1919.

"J. H. Miller, Tax Assessor and Collector,
"Ward County Irrigation District No. 1."

The procedure in assessing appellant's land is shown by the following excerpts from the assessor's testimony:

"As to what procedure I adopt to get property on the rolls when it is not rendered by the owner: The place is on the rolls where I have no rendition for it; when I go to complete them and it is not all rendered I make a note of it like those presented, and then in making up the complete rolls I place it on there just as I had one signed up properly. I present the rolls to the board of equalization when it is in session in June. For the years that this property shows to be delinquent, that is, for the years this property shows to be assessed, I presented the property to the board of equalization in that manner. The taxes were equalized by the board of equalization for these years. As assessor and tax collector I submitted the matter of this land to the board of equalization when it convened and after the board of equalization acted I prepared the tax rolls. I have the rolls for these years 1919, 1920, 1921, and 1922, and I will turn to the J. W. Ogburn land. * * * The land involved in this suit was not rendered for taxation by Mr. Ogburn in the year 1920. I assessed it myself. I submitted this land to the board of equalization, as assessed by me, with all the other land in the district. The board of equalization returned this assessment, among others, to me,

When the time came around for tax assessments or for the rendition of taxes I made up my inventory of the properties and I described all the property in the district. When I got to this one I simply rendered it, and in rendering this land I rendered it altogether. I was agent for Mr. Ogburn in 1922; other years I was not. That is all I did in reference to this rendition or inventory, except to file it with the board of equalization. They made no change in this valuation that I placed upon this land. * * * As to whether they rendered a blanket order approving these renditions, I don't think a blanket order would cover it. They met on the regular date and went over these things, and then after they made a thorough examination of the rolls, such as were not rendered according to the schedule, they made corrections and notified the party and set a date for them to come and show cause why it should not be changed. The board of equalization entered no order at all in the J. W. Ogburn case for the year 1919. They approved all of the renditions together and filed them as a record of their meetings. They entered one order approving all of them. For the year 1922 I rendered the land myself, just as I did before. I was agent for Mr. Ogburn that year, not particularly to render his property, but I do look after his farms and collect his rents. As to when I made up these lists for the different years, I think you will get that from the lists. After I made the lists up

I filed them immediately and presented them to the board of equalization, together with the others. The board of equalization met for the year 1919 on the first Tuesday in June, and for the other years they met on the first Tuesday in June of each year. I prepared these instruments in March of each year and the board of equalization met on the first Tuesday in June of each year. * * * Mr. Ogburn has never rendered his land for taxation at any time, and he has never appeared before any board of equalization for the purpose of contesting the value placed on his land."

From this evidence it appears there has been an assessment of Ogburn's property in substantially the manner prescribed by law for property in the district not rendered by the owner or his agent. Not having rendered it himself, he was charged by law with notice that at the meeting of the board of equalization on the first Monday in June of each year the assessor would present to the board a list of his property, and the board would appraise it. It was his duty to be there and at least make an effort to see that his property was appraised upon a proper valuation.

At the second meeting of the board, in addition to hearing protests from persons whose valuations had been raised at its first meeting, it also finally examines and equalizes the value of all the property on the assessor's lists or books or that may have been placed thereon by the board. If appellant was not satisfied with the appraisement of his property made by the board at its first meeting, then he had the right to again appear at the second meeting and again attempt to obtain a proper valuation and equalization with other property. This he failed to do. The law having provided a special tribunal for the proper appraisement and equalization of his property values, and he having failed to avail himself of the remedy thus provided, and no excuse shown for such failure, he has no remedy in the courts except for jurisdictional defects. Duck v. Peeler, 74 Tex. 269, 11 S. W. 1111; Swenson v. McLaren, 2 Tex. Civ. App. 331, 21 S. W. 300; Clawson Lumber Co. v. Jones, 20 Tex. Civ. App. 208, 49 S. W. 909; Cooley on Taxation (4th Ed.) §§ 1201, 1208; 37 Cyc. 1246.

[4] Appellant seeks to avoid the force of this rule by asserting that he had until June 1st to make his rendition, and the assessor prepared the lists in March which he afterwards submitted to the board, long prior to the time the appellant had within which to make his own rendition; also that the assessor without authority of law undertook to make the assessment for appellant. These objections, if well taken, would probably be regarded as jurisdictional, but in our opinion they are not tenable. It made no difference that the assessor prepared the list in March instead of waiting until June 1st.

267 S.W.—21

If appellant prior to June 1st had offered to make his own assessment, the assessor would not have been warranted in declining to accept the same, and a very different question would be presented. But such is not the case. After June 1st it was the duty of the assessor to prepare the list for submission to the board, and it is wholly immaterial that in the discharge of that duty he presented to the board a list which he had prepared prior to June 1st.

[5] As to the second objection it is true the assessor in general terms stated that he assessed the property for appellant, but it is manifest from his evidence as a whole that what he in fact did was to simply prepare, for submission to the board for appraisement by the latter, a list of the appellant's property as required by law with the valuations which he thought proper indicated thereon, and the board simply approved the same and thereby made the indicated appraisement its own. Appellant seems to attach some importance to the fact that the board acted without notice to him. He knew he had not rendered his property to the assessor, and he was charged by law with notice that in such cases the board would appraise his property, and there was no occasion to notify him that they would discharge the duty imposed upon it.

For the reason indicated appellant lost any right which he otherwise might have had of appealing to the courts for relief. What has been said disposes of all assignments and propositions which go to the real merits of the case.

Our ruling upon the other assignments will be briefly stated.

[6] It is asserted that the publication of the delinquent tax record was not shown by competent evidence but by hearsay. The tax assessor was permitted to testify without objection that it was published in the newspaper. He stated it as a fact, and there is nothing to show that it was based upon hearsay. While his testimony was not the best evidence of the publication, nevertheless secondary evidence is competent and admissible, unless objected to and sufficient to support a finding. Matlock v. Glover, 63 Tex. 231, and other cases cited in 2 Michie's Dig. 834.

[7] Under the fifth assignment it is complained that the mailing of the delinquent tax notices to appellant is neither pleaded nor proven as required by article 7687a, Complete Texas Statutes 1920. This provision has no application to delinquent taxes such as are here sued for. So far as we are advised, notification by publication, as provided by article 5107—44, is all that is required as to delinquencies of this character of taxes.

[8] By the eighth assignment complaint is made of an alleged error in the issue submitted to the jury. The objection here made was not presented in the court below, and

was therefore waived. Article 1971, R. S. Furthermore, under our ruling the issue submitted was immaterial, and error therein, if any, for such reason is harmless.

There are several other assignments and propositions appearing which appellant submits for what they are worth, without discussion, statement, or citation of authority. In our opinion they present no error.

The ruling in this case and in cause No. 1687, Ward County Irrigation District No. 1 v. Carr, 267 S. W. 315, this day decided, is not to be construed as an approval of the property valuations made by the assessor and board of equalization nor of the zoning system employed for fixing valuations. On the contrary, we are of the opinion all taxable property in the district should be assessed at its full value, but no more. Nor is it permissible to discriminate in favor of personal property by assessing it at a different ratio of its value to that of realty. As to the zoning system of valuation it requires no argument to demonstrate the unsoundness of a system which ignores the value of improvements and of other important considerations in determining the real value of real estate and which operates so as to value at $67 per acre over 200 acres of uncultivated alkali land fit only for grazing, and which is worth in fact from $2 to $7.50 per acre.

Chief Justice HARPER did not participate in the decision of this case.

Affirmed.

### On Rehearing.

[9] The first ground of error assigned in the motion for rehearing was not presented in the court below nor in this court until the filing of the motion. The ninth assignment of error to which the appellant refers, being No. 12 in the motion for a new trial, does not raise the question, nor does any proposition submitted in the brief hint at the same. The error, if any, is not fundamental, and it is now too late to raise the question.

Appellant asserts that our ruling that he is precluded from complaining of the valuation placed upon his land by his failure to appear before and seek relief from the board of equalization is in conflict with the decision of the Supreme Court in Lively v. Ry. Co., 102 Tex. 545, 120 S. W. 852. That was an action by the Missouri, Kansas & Texas Railway Company of Texas against the county judge and the county commissioners of Dallas county, constituting the board of equalization of said county, and the tax collector of the county, each in his official capacity, to set aside alleged acts of the board of equalization of said county, and to enjoin the tax collector from collecting or attempting to collect a portion of the taxes upon the intangible assets of the railway company, which assets had been assessed at the full and fair market value thereof, whereas the property of the taxpayers generally in the county had been assessed, equalized, and placed on the tax rolls for taxing purposes at not exceeding 50 per cent. of its value. In this case it was held "that it was not necessary for the railroad company to apply to the board of equalization of Dallas county for relief, because that board had no power to grant any such relief."

In the case at bar the board of equalization of Ward County Irrigation District No. 1 had full power to grant any relief to which the appellant was entitled. The ground of the ruling in the Lively Case, therefore, does not apply here.

The other matters presented in the motion for rehearing are sufficiently disposed of in the main opinion.