## STANLEY *v.* SUPERVISORS OF ALBANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF NEW YORK.

Argued March 15, 16, 1887. — Decided May 2, 1887.

When the case below is tried by a court without a jury, its findings upon questions of fact are conclusive; and this court can consider only its rulings on matters of law properly presented in a bill of exceptions, and the further question, when the findings are special, whether the facts found are sufficient to sustain the judgment rendered.

When the statutes of a state provide a board for the correction of errors and irregularities of assessors in the assessment of property for purposes of taxation, the official action of that body is judicial in character, and its judgments are not open to attack collaterally.

A party who feels himself aggrieved by overvaluation of his property for purposes of taxation, and does not resort to the tribunal created by the state for correction of errors in assessments before levy of the tax, cannot maintain an action at law to recover the excess of taxes paid beyond what should have been levied on a just valuation.

THIS case has once been before this court, and is reported at 105 U. S. 305, to which reference is made for the facts up to that time. Subsequent to that decision, the plaintiff Stanley was permitted to amend his complaint. The ground of the relief sought for, as stated in each count of the amended complaint, except the fourth, was as follows:

"And plaintiff says, upon information and belief, that the said pretended assessment was illegal and void. That under the Constitution and laws of the United States said shares of stock were not liable to assessment and taxation by state authority, except so far as permission to make such assessment was given by § 5219 of the Revised Statutes of the United

States, which provides that nothing therein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares in assessing taxes imposed by authority of the state within which the association is located; but that the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association, owned by non-residents of any state, shall be taxed in the city or town where the bank is located and not elsewhere.

"And plaintiff further says, upon information and belief, that the said assessors did intentionally, by a rule prescribed by themselves, assess or assume to assess the said shares of stock in said National Albany Exchange Bank at a greater rate in proportion to their actual value than other moneyed capital generally, in the hands of individual citizens of the state of New York. That the rule adopted by said assessors was to assess all shares of stock in state and national banks in said city at par, irrespective of their actual or market value, making the requisite deduction for real estate owned by said banks. That such rule necessarily resulted in imposing upon the shares of said National Albany Exchange Bank a greater rate of taxation than was assessed upon other moneyed capital generally. That there were in said sixth ward, of said city, at the time of said assessments, several banks, state and national, and that the actual value of the stock of said banks varied, that of the shares of stock in the said National Albany Exchange Bank being considerably less than the stock of most of the other banks in the said city.

"That there was a large amount of moneyed capital in said city of Albany and in said sixth ward, in the year aforesaid, in the hands of individual citizens of the state of New York, and that such moneyed capital was generally assessed at a less rate than the said shares of stock in said National Albany

Exchange Bank. That the rule adopted as aforesaid by said board of assessors was not authorized by the laws of the state of New York, and was in violation of the provisions of § 5219 of the Revised Statutes of the United States; and that, for the reasons above set forth, the said pretended assessment was illegal and void, and the money thereby collected was wrongfully collected and paid into the county treasury, and belongs of right to the said Chauncey P. Williams and not to said county."

After this amendment was made, but before the trial, the plaintiff in error discontinued the action as to the 5th, 6th, 7th, 10th, 11th and 12th counts, as to which the statute of limitations had not run, and the case was retried before the court, without a jury, a jury trial having been waived by the parties, upon the counts remaining in the complaint, viz., 1st, 2d, 3d, 4th, 8th, 9th. Judgment for defendant, excepting as to the fourth count.

Judgment for plaintiff on the fourth count. 15 Fed. Rep. 483. This was the count to recover the taxes collected on the shares of one of the shareholders, viz., Chauncey P. Williams, who had made proof before the assessors that he owed debts exceeding the amount of his assessment, which question had been presented and disposed of by the previous determination of this court. 105 U. S. 316.

*Mr. Matthew Hale* for plaintiff in error.

I. The court below erred in holding and deciding that the plaintiff had failed to establish the allegations in the complaint, that the assessments were at a greater rate than was assessed upon other moneyed capital in the hands of individual citizens of the state; and also in refusing to find, as requested by the plaintiff, that the rule adopted and acted upon by the assessors of assessing all bank stock at its par or nominal value, irrespective of its actual value, necessarily resulted in assessing shares of stock in the National Albany Exchange Bank at a greater rate in proportion to their actual value than other moneyed capital, and was, therefore, a violation of the restriction contained in § 5219 of the Revised Statutes.

The law applicable to this case, as laid down by this court when it was here before, is as follows: "But if it is intended to allege that, apart from the question of the right of the shareholder to deduct for his debts — a question which, in this case, *was disposed of* and was in issue — it can be proved that the assessors habitually and intentionally, or by some rule prescribed by themselves, or by some one whom they were bound to obey, assessed the shares of the national banks higher in proportion to their actual value than other moneyed capital generally, then there is ground for recovery, and a hearing as to that should be granted." 105 U. S. 318.

This was the same doctrine laid down by this court in the Ohio cases, namely, that the systematic and intentional valuation of other moneyed capital by the taxing officers below its value, while the shares in question are assessed at their full value, or at a greater rate, is a violation of the act of Congress which prescribes the rule by which they shall be taxed by state authority. *Pelton* v. *National Bank*, 101 U. S. 143; *Cummings* v. *National Bank*, 101 U. S. 153. It may be correctly stated in different language as follows: Where the habitual and intentional action of local assessors in assessing the shares of a national bank is in violation of the restrictions imposed by the laws of the United States, it is none the less illegal and void because it also violates a state law. There can be no question that the shares of the national bank in question were assessed at a greater rate than "other moneyed capital." This unequal assessment was habitual and intentional on the part of the assessors and by a rule prescribed by themselves. This is shown by clear and uncontradicted evidence.

This course of action was taken by the assessors notwithstanding the protest of the shareholders in the Exchange Bank and has been repeatedly condemned by the courts of the state of New York. In the *certiorari* proceeding, the Supreme Court of the state of New York say: The assessments have not been made against the shareholders "on the *value* of their shares of stock" as the law requires, but were made as the fact is certified in the return, at par value, with-

out regard to the true value, in excess of par.    Such basis of assessment was in manifest disregard of these plain directions of the statute.    2 Hun, 585.    It is an undisputed fact, appearing in the return, that the board of assessors, in the assessment of all bank stock in the city of Albany, adopted as their standard of valuation the par value of the shares whenever the actual or market value was equal to or exceeded the par value, and regardless of the actual value whenever it exceeded par.    *This was a palpable violation of the laws of this state*, requiring and regulating the assessment of property for the purpose of taxation. . . .    The conclusion is inevitable that it was the duty of the defendants to have assessed the shares of stock in all of the banks at their true value instead of their par value, and that *all of the assessments are unauthorized and erroneous* where the actual value of the stock is above par.    *People* v. *Assessors*, 2 Hun, 583.

The Court of Appeals of the state of New York, in the case of *Williams* v. *Weaver*, 75 N. Y. 30, in which the assessors of the city of Albany were defendants, say : It may be assumed as entirely clear that the basis of assessment against the owners of shares of stock of the Albany National Exchange Bank was erroneous.    These assessments were not made on the value of the shares of stock, as required by law (Session Laws 1866, c. 761), but were made at the " par value" without regard to their real value in the market.    The effect of such a valuation necessarily *must be to make great inequality, and as the record in this case shows, to impose upon the shareholders whom the plaintiff represents a greater burden of taxation than that which would properly belong to them.*

II.    The rule adopted by the assessors was in violation of the XIVth Amendment to the Constitution, in that it practically denied to the shareholders the "equal protection of the laws."    See *County of Santa Clara* v. *Southern Pacific Railroad*, 18 Fed. Rep. 385; *County of San Mateo* v. *Same*, 13 Fed. Rep. 145.

III.    The proof in this case, taken in connection with the laws of the state of New York, which are deemed to be in evidence here, and may, under the stipulation, be referred to

on any argument of the case, shows that there was practically an unlawful discrimination made against national bank stock during the years in question in the city of Albany.

IV. By the statutes of the state of New York, a vast amount of moneyed capital is and was during the years in question, exempt.

V. The court erred in excluding the evidence offered by the plaintiff to show that there was no certificate connected with the assessment roll of the sixth ward for the years 1874 and 1875; and that the only oath annexed thereto was that set forth at folio 269 of the record. Such evidence was offered in order to show that there was no valid assessment of any real or personal property in the sixth ward of the city of Albany, during the years in question; and, that, therefore, the assessments imposed upon the tax collected from stockholders of the Exchange Bank, were at a greater rate than was imposed upon other moneyed capital in said years. The evidence was objected to as not being within the issue presented by the pleadings, and under a stipulation which appears on the record, marked stipulation No. 2, which is to be found at folios 163 and 164 of the record. The courts of the state of New York have repeatedly held that an assessment without the certificate or oath prescribed by the statute is absolutely void. *Van Rensselaer* v. *Whitleede*, 7 N. Y. 517; *Hinckley* v. *Cooper*, 22 Hun, 253; *Brevoort* v. *Brooklyn*, 89 N. Y. 128.

VI. The plaintiff is certainly entitled to recover back the taxes assessed in 1873. The first two counts in the amended complaint are for taxes assessed in 1873 and collected in 1874. The Revised Statutes did not take effect until December, 1873. The assessment of the year 1873 is, therefore, to be governed by the law of 1864, which was then in operation. Under that law there was a special prohibition against taxing shares of a national bank at a greater rate than those of "any of the banks organized under authority of the state where such association is located." 13 Stat. 112, § 41. There can be no question that this restriction was violated by the assessment in question. The shares of the Mechanics and Farmers' Bank, a state bank, were assessed at the rate of only thirty-five per

cent of actual value, while those of the Exchange Bank were assessed at eighty. As to the taxes of that year, therefore, the mere fact that the shares of Mr. and Mrs. Williams, were, intentionally and by the rule above mentioned, assessed at a greater rate than those of a state bank, furnishes sufficient ground for invalidating the tax. *Van Allen* v. *The Assessors,* 3 Wall. 573.

VII. If the assessments in question should not be considered wholly void, they should be held void at least as to the excess over the average rate assessed upon other moneyed capital, and the plaintiff should have judgment for such excess.

VIII. The court properly overruled the objection to the jurisdiction of the court raised upon defendant's amended answer, at folios 160 to 162 of the record. 1. So far as the amended answer alleges that the assignment to plaintiff did not confer upon him the entire interest in the subject matter of the suit, it is well settled that the defence cannot be sustained. This matter is governed by the state practice. Rev. Stat. § 914. It has been held by the New York Court of Appeals, that if a plaintiff, suing upon an assigned claim has a valid transfer as against the assignor, and holds the legal title to the demand, the defendant has no legal interest to inquire whether the tranfer was an actual sale or merely colorable, or whether a consideration was paid therefor. In the language of Chief Judge Church, "The assignor could give the demand to the plaintiff, or sell it to him for an inadequate consideration, or without any consideration. It is enough if the plaintiff has the legal title to the demand, and the defendant would be protected in a payment or a recovery by the assignee." *Sheridan* v. *Mayor,* 68 N. Y. 30, 32; *Stone* v. *Frost,* 61 N. Y. 614; *Allen* v. *Brown,* 44 N. Y. 228. See also *Ames* v. *Kansas,* 111 U. S. 449; *Manufacturing Co.* v. *Bradley,* 105 U. S. 175; *Williams* v. *Nottawa,* 104 U. S. 209. Even in cases arising since the act of 1875, it is held that, if the assignment is absolute, and there is no agreement to re-transfer after litigation, the court will not inquire into motives. *Collinson* v. *Jackson,* 14 Fed. Rep. 305; *Newby* v. *Oregon Central Railway,* 1 Sawyer, 63; *De Laveaga* v. *Williams,* 5 Sawyer, 573; *Marion* v. *Ellis,* 16 Fed. Rep. 410.

*Mr. Wheeler H. Peckham* and *Mr. S. W. Rosendale* for defendants in error.

MR. JUSTICE FIELD delivered the opinion of the court.

The act of Congress, in providing for taxation of the shares of national banks, by authority of the state in which such institutions are situated, imposes two restrictions upon the exercise of the power, namely, that the taxation shall not be at a greater rate than upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national bank owned by non-residents of the state shall be taxed in the city or town where it is located. Rev. Stat. § 5219.

In *People* v. *Weaver*, 100 U. S. 539, this court held, with reference to taxation thus authorized, that the prohibition against discrimination has reference to the entire process of assessment, and includes the valuation of the shares as well as the rate of percentage charged, and, therefore, that a statute of New York which established a mode of assessment by which such shares were valued higher in proportion to their real value than other moneyed capital in the hands of individuals, was in conflict with the prohibition, although no greater percentage was levied on such valuation. If this were not so, a rule of appraisement, applied to shares of national banks, different from one applied to other moneyed capital, might lead to such varied valuations as to materially affect the amount of taxes levied, although the same percentage should be charged on the valuations. There must be a uniform rule of appraisement of value, and the same percentage charged on the values determined, to meet the requirements of the statute.

This action is founded upon an alleged disregard of this requirement by the assessing officers of the county of Albany, New York. The plaintiff, Edward N. Stanley, is a citizen of Illinois, and, claiming to be assignee of certain shareholders of the National Albany Exchange Bank, located at Albany in New York, sues to recover the amount of certain taxes alleged to have been illegally collected from them upon their

shares in that bank during the years from 1874 to 1879, both inclusive, and paid into the treasury of the county of Albany.

The original complaint contained several counts, all of which, except the fourth, were substantially the same, except as to the names of the stockholders and the amounts assessed and collected. They alleged the assessment by the board of assessors of the city of Albany of the shares held by the assignors of the plaintiff, acting under color of an act of the legislature of New York, passed April 23, 1866, being chapter 761 of the laws of that year, at $100 a share, being the par value thereof, after deducting therefrom such sum as was in the same proportion to such par value as was the assessed value of the real estate of the banking institution to the whole amount of its capital stock, and the collection of the amount levied, and its payment into the treasury of the county of Albany. They also alleged, upon information and belief, that chapter 761 of the laws of 1866 was in conflict with the laws of the United States, and especially with the provision that taxation by state authority of shares of stock in banking associations shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, for the reason, among others, that the said act of New York did not permit debts of the owners of the bank stock to be deducted from the value thereof in its assessment, although such deduction of the debts of the owner was at the time, and is still, permitted and required by the laws of New York to be made from the value of every other kind of personal property, and moneyed capital other than bank stock, in assessing the same for the purpose of taxation.

They also alleged, upon information and belief, that the assessment of the shares of stock of the said banking association by the board of assessors was at a greater rate than their assessment upon shares of stock of banks organized under the laws of New York and located in the same ward of the city, and was at a greater rate than was assessed upon other moneyed capital in the hands of individual citizens of the state. For these reasons the plaintiff alleged that the assessment of the shares of stock, and the levy of the tax thereunder, were

illegal and void, and that the money received therefor was wrongfully collected and paid into the county treasury, and belonged of right to the shareholders, and not to the county.

The fourth count differed from the others in averring that the assignor of the plaintiff named in this count, Chauncey P. Williams, had presented to the board of assessors an affidavit stating that the value of his personal estate, including his bank stock, after deducting his just debts and property invested in the stock of corporations or associations liable to be taxed therefor, and his investments in the obligations of the United States, did not exceed one dollar, and requested the board of assessors to reduce his assessment to that amount, but that the board had refused to make such reduction; and that thereupon said Williams applied to the Supreme Court of the state for a writ of mandamus to compel the assessors to make the reduction; that the Supreme Court denied the application on the ground that the act of the legislature did not permit such reduction, but required the assessment of the bank stock at its full value; that the Court of Appeals of the state, on appeal, affirmed the decision and judgment of the Supreme Court; that the Supreme Court of the United States reversed the judgment of the Court of Appeals, and held that the statute, c. 761 of the laws of the state of 1866, in that it did not permit a reduction for indebtedness from the assessment of bank stock, which by the laws of the state was required to be made from the assessment of every other kind of personal estate and moneyed capital, was in conflict with the laws of the United States.

The answer of the defendant consisted in a specific denial of the several allegations of the complaint, with an averment that the assessments were duly and regularly made by a board of assessors having jurisdiction of the matter. In a supplementary answer the defendant also set up that the assignment of the amounts in suit to the plaintiff was improperly and collusively made for the purpose of giving the court jurisdiction.

The action was twice tried, at both times by the court without the intervention of a jury, by consent of parties.

On the first trial, which took place in October, 1880, the plaintiff recovered the whole amount upon the first ground stated, that the act of New York, c. 761 of the laws of 1866, was in conflict with the act of Congress, in not permitting in the assessment of the value of the stock of the bank a reduction for the debts of the holder. The second ground of objection to the validity of the assessment, that it was at a greater rate than was assessed on other moneyed capital in the hands of individual citizens, was not considered. The case was then brought to this court for review. After full consideration, we held substantially this: that the statute of New York was in conflict with the act of Congress, so far as it did not permit a stockholder of a national bank to deduct the amount of his just debts from the assessed value of his stock, while by the laws of the state the owner of all other personal taxable property was allowed to deduct such debts from its value; but that neither the statute nor the assessment under it was for that reason void. If the stockholder had no debts to deduct, the mode of assessment adopted was not invalid as to him; he could not complain of it, nor recover the taxes paid pursuant to it. If he had debts, the assessment without a deduction for them in the estimate of the taxable value of the stock was only voidable. The assessing officers, in making the assessment, were acting within their authority until duly notified of the debts which were to be deducted. In such case, therefore, the duty devolved upon the stockholder to show to the assessing officers what his debts were, and to take such steps as were required by the law to obtain a correction of the over-assessment. We, therefore, decided that for the taxes collected upon the assessment alleged in the fourth count the plaintiff was entitled to judgment; this court having held, in *People* v. *Weaver*, 100 U. S. 539, that assessment invalid, for the reason that the assessors had not allowed any deduction for the debts of the stockholder, but that for the taxes collected upon the assessments alleged in the other counts, no recovery could be had; the stockholders there mentioned not having produced any evidence that they had presented to the assessors an affidavit of the amount which they would be entitled to de-

duct from the assessment of their shares, if the same rule had been applied to the assessment of bank shares which was applied to the assessment of other personal property, or any evidence that they owed anything whatever to be deducted, or that they had taken any steps under the laws of New York to correct the over-assessment complained of. The judgment of the Circuit Court was accordingly reversed, and judgment ordered for the plaintiff upon the fourth count, and for the defendants on the other counts. *Supervisors* v. *Stanley,* 105 U. S. 305, 316.

Subsequently, upon the attention of the court being called to the fact that there was evidence in the case upon the allegation that the assessment of the shares of stock in the national banking association was at a greater rate than was assessed upon shares of stock in banks organized under the laws of New York, and located in the same city, and at a greater rate than was assessed upon other moneyed capital in the hands of individual citizens of the state, upon which the court below did not pass, the judgment was so far modified as to permit that court, in its discretion, to hear evidence on that point, and, if necessary, to allow an amendment of the pleadings to present it properly.

When the case was remanded, on application to the Circuit Court, all the counts except the fourth were amended. The substance of the amendments consisted in allegations that the assessors, by a rule prescribed by themselves, assessed the shares of the National Albany Exchange Bank at such greater rate; that the rule adopted was to assess all shares of stock in state and national banks in the city of Albany at par, without regard to their actual or market value, making the requisite deduction for real estate owned by the banks; that this rule necessarily resulted in imposing upon the shares of the National Albany Exchange Bank a greater rate of taxation than was assessed upon other moneyed capital generally; that there were in the sixth ward of the city, at the time of the assessments, several banks, state and national; and that the actual value of the stock of the banks varied, that of the shares of stock in the National Albany Exchange Bank being

considerably less than that of the stock of most of the other banks in the city.

Several of the counts were afterwards abandoned, those remaining applying only to the taxes of the years 1873, 1874, and 1875. The case came on for a second trial in March, 1883, and, after hearing the proofs, the court filed its findings of fact on the issues presented by the pleadings, and gave judgment for the plaintiff on the fourth count, and for the defendants on the other counts. To review this judgment the case is brought to this court on a writ of error.

Several of the assignments of error presented for our consideration are to rulings of the court below upon the evidence before it; to its finding of particular facts; and to its refusal to find other facts. Such rulings are not open to review here; they can be considered only by the court below. Where a case is tried by the court without a jury, its findings upon questions of fact are conclusive here; it matters not how convincing the argument that upon the evidence the findings should have been different. Thus, the principal finding of the court is, "That the plaintiff has failed to establish the allegations in said complaint, that the several assessments herein referred to were at a greater rate than was assessed upon other moneyed capital in the hands of individual citizens of this state." And the first assignment of error is, that the court erred in deciding that the plaintiff failed to establish the allegations mentioned, and the greater part of the oral argument of the plaintiff's counsel and of his printed brief was devoted to the maintenance of this proposition; which is nothing more than that the court below found against the evidence — a question not open to review or consideration in this court. Only rulings upon matters of law, when properly presented in a bill of exceptions, can be considered here, in addition to the question, when the findings are special, whether the facts found are sufficient to sustain the judgment rendered. This limitation upon our revisory power on a writ of error in such cases is by express statutory enactment. Act of March 3, 1865, 13 Stat. c. 86, § 4; Rev. Stat. § 700.

The same answer will apply to the exceptions taken to the

refusal of the court to make certain additional findings. If error was thus committed, it was in not giving sufficient weight to the evidence offered — a matter determinable only in the court below.

To recover in this case, the plaintiff was required to prove, under the decision when the case was first here, that " the assessors habitually and intentionally, or by some rule prescribed by themselves, or by some one whom they were bound to obey,- assessed the shares of the national banks higher, in proportion to their actual value, than other moneyed capital generally."

The court below specially found the negative of this; that the assessors did not, at any of the times in question, habitually or intentionally, or by any rule prescribed by themselves, or by any one whom they were bound to obey, thus assess the shares of national banks.

The counsel for the plaintiff insists, however, notwithstanding this finding,.that the inference of such habitual assessment at a higher rate follows from the findings, that within the city of Albany there were nine banks, and that the actual value of the shares in all of them except one exceeded their par value, varying in that respect from 10 to 70 per cent premium, and yet the value of all was assessed at par. The actual value of shares of the National Albany Exchange Bank was 35 per cent above par, and the actual value of the shares of some of the other banks was above and some below that figure. The court found that the method pursued by the assessors was generally satisfactory to the owners of national bank stock in the city of Albany, with the exception of a few stockholders in the National Albany Exchange Bank, and that such method was pursued by the assessors with no purpose or intention of unduly assessing shares of national banks, but simply because it was thought by them to be the most satisfactory one to the owners of such property, and the best in itself. A different method might have led to perplexing difficulties, owing to the great fluctuations to which shares in banking institutions are subject, their value depending very much on the skill and wisdom of the managers of those insti-

tutions. Intelligent men constantly differ in their estimate of the value of such property, and the stock market shows almost daily changes. Presumptively, the nominal value is the true value, any increase from profits going, in the natural course of things, in dividends to the stockholders. This method, applied to all banks, national and state, comes as near as practicable, considering the nature of the property, to securing, as between them, uniformity and equality of taxation; it cannot be considered as discriminating against either. Both are placed on the same footing. In *Mercantile National Bank of New York* v. *The State of New York*, 120 U. S. 138, 155, recently decided, this court said: "The main purpose, therefore, of Congress in fixing limits to state taxation on investments in the shares of national banks was to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring individuals or institutions carrying on a similar business and operations and investments of a like character. The language of the act of Congress is to be read in the light of this policy."

The method pursued could in no respect be considered as adopted in hostility to the national banks. It must sometimes place the estimated value of their shares below their real value; but such a result is not one of which the holders of national bank shares can complain. It must sometimes lead also to over-valuation of the shares; but, if so, no ground is thereby furnished for the recovery of the taxes collected thereon. It is only where the assessment is wholly void, or void with respect to separable portions of the property, the amount collected on which is ascertainable, or where the assessment has been set aside as invalid, that an action at law will lie for the taxes paid, or for a portion thereof. Over-valuation of property is not a ground of action at law for the excess of taxes paid beyond what should have been levied upon a just valuation. The courts cannot, in such cases, take upon themselves the functions of a revising or equalizing board. *Newman* v. *Supervisors*, 45 N. Y. 676, 687; *National Bank of Chemung* v. *Elmira*, 53 N. Y. 49, 52; *Bruecher* v.

*The Village of Portchester*, 101 N. Y. 240, 244; *Lincoln* v. *Worcester*, 8 Cush. 55, 63; *Hicks* v. *Westport*, 130 Mass. 478; *Balfour* v. *City of Portland*, 28 Fed. Rep. 738.

In nearly all the states, probably in all of them, provision is made by law for the correction of errors and irregularities of assessors in the assessment of property for the purposes of taxation. This is generally through boards of revision or equalization, as they are often termed, with sometimes a right of appeal from their decision to the courts of law. They are established to carry into effect the general rule of equality and uniformity of taxation required by constitutional or statutory provisions. Absolute equality and uniformity are seldom, if ever, attainable. The diversity of human judgments, and the uncertainty attending all human evidence, preclude the possibility of this attainment. Intelligent men differ as to the value of even the most common objects before them — of animals, houses, and lands in constant use. The most that can be expected from wise legislation is an approximation to this desirable end; and the requirement of equality and uniformity found in the constitutions of some states is complied with, when designed and manifest departures from the rule are avoided.

To these boards of revision, by whatever name they may be called, the citizen must apply for relief against excessive and irregular taxation, where the assessing officers had jurisdiction to assess the property. Their action is judicial in its character. They pass judgment on the value of the property upon personal examination and evidence respecting it. Their action being judicial, their judgments in cases within their jurisdiction are not open to collateral attack. If not corrected by some of the modes pointed out by statute, they are conclusive, whatever errors may have been committed in the assessment. As said in one of the cases cited, the money collected on such assessment cannot be recovered back in an action at law, any more than money collected on an erroneous judgment of a court of competent jurisdiction before it is reversed.

When the over-valuation of property has arisen from the adoption of a rule of appraisement which conflicts with a con-

stitutional or statutory direction, and operates unequally not merely on a single individual but on a large class of individuals or corporations, a party aggrieved may resort to a court of equity to restrain the exaction of the excess, upon payment or tender of what is admitted to be due. This was the course pursued and approved in *Cummings* v. *National Bank*, 101 U. S. 153. In that case it appeared that the officers of Lucas County, Ohio, charged with the valuation of property for the purposes of taxation, adopted a settled rule or system by which real estate was estimated at one third of its true value, ordinary personal property about the same, and moneyed capital at three fifths of its true value. The state board of equalization of bank shares increased the valuation of them to their full value. Upon a bill brought by the Merchants' National Bank of Toledo against the treasurer of the county, in which the bank was established, to enjoin him from collecting taxes assessed on the shares of the stockholders, payment of which was demanded of the bank under the law, it was held that the rule or principle of unequal valuation of the different classes of property for taxation adopted by the board of assessment was in conflict with the constitution of Ohio, which declares that "laws shall be passed taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise, and, also, all the real and personal property according to its true value in money," and worked manifest injustice to the owners of shares in national banks; and that the bank was, therefore, entitled to the injunction against the collection of the illegal excess, upon payment of the amount of the tax which was equal to that assessed on other property. That decision was rendered upon a disregard by the assessing officers of a rule prescribed by the constitution of the state, but the same principle must apply when their action in assessing the shares of national banks is in disregard of the act of Congress. The plaintiff below did not think proper to resort to this method of obtaining relief, which would have given him all he was entitled to, if in fact his shares were assessed at a greater rate than was assessed on other moneyed capital, because of their illegal over-valuation.

It only remains to notice the exceptions taken to the exclusion of the testimony offered, that the law of New York required an oath or certificate to be annexed to the assessment roll substantially different from the oath actually annexed, and the claim that the plaintiff has a right to recover the taxes assessed in 1873 and collected in 1874. The exclusion of the testimony as to the alleged defect in the assessment roll was correct under the stipulation of the parties, that the plaintiff would not claim a right to prove any failure of the assessors to take the proper oath. A defect in the form of the oath annexed, if there be one, could have no bearing upon the question at issue. The claim for the taxes assessed in 1873 is open to similar objections to those presented against the claim for the taxes of the other years. If the assignors of the plaintiff had any just grounds of complaint to the assessment as excessive they should have pursued the course provided by statute for its correction, or resorted to equity to enjoin the collection of the illegal excess, upon payment or tender of the amount due upon what they conceded to be a just valuation.

*It follows that the judgment of the court below must be affirmed; and it is so ordered.*