CITY OF LONGVIEW v. CITIZENS' NAT. BANK et al. (No. 3322.)

Court of Civil Appeals of Texas. Texarkana. Jan. 13, 1927.

Rehearing Denied March 3, 1927.

1. Municipal corporations ⊕⇒974(3)—Failure to appeal from equalization board to commissioners under city charter held acquiescence in assessed valuation.

Failure of bank and stockholders, who, after notice, appeared at hearing before the board of appraisement and equalization, to prosecute appeal from the board's decision fixing valuation of stock for taxation to the board of commissioners under Longview City Charter, §§ 55(b), 55(c), prescribing that as sole method of review, must be regarded as acquiescence in the board's action.

On Motion for Rehearing.

2. Taxation ⊕⇒40(1)—Courts must extend constitutional protection against discriminatory taxation in cases properly before them.

It is the duty of the courts, when appealed to under proper conditions, to extend constitutional protection against unfair discrimination in the exercise of the taxing power.

3. Municipal corporations ⊕⇒974(3) — Court would not relieve from board's discriminatory assessment stockholders failing to appeal; legality of tax and board's jurisdiction not being involved.

Bank and stockholders could not obtain relief from courts from alleged discriminatory overvaluation of stock for taxation, where they failed to appeal as required by Longview City Charter, §§ 55(b), 55(c), from decision of the board of equalization on hearing at which they appeared; there being no question of the board's jurisdiction or of the validity of the tax.

Appeal from District Court, Gregg County; P. O. Beard, Judge.

Action by the City of Longview against the Citizens' National Bank and others. From a judgment for plaintiff for less than the amount prayed, plaintiff appeals. Reformed and affirmed.

Fred V. Hughes, of Tyler, and E. M. Bramlette, of Longview, for appellant.

Young & Stinchcomb, of Longview, for appellees.

HODGES, J. The city of Longview prosecuted this suit against the Citizens' National Bank of Longview and its shareholders to collect city taxes due for the year 1923. The case was tried before the court and a judgment rendered for less than the sum sued for, and the city has appealed. The material facts are presented in the following findings of the trial judge:

"That on the 28th day of May, 1923, L. J. Everett, president of said bank, rendered the real estate of the bank for taxation to the tax assessor of the city of Longview at a valuation of $21,000. This rendition was and is satisfactory to the city of Longview, and there is no dispute about said rendition in this suit. He also rendered the capital stock (real estate being excepted) of the bank at $22,000. L. J. Everett, as president of the bank, was notified to appear before the equalization board of the city on or about August 24, 1923, to show cause why the valuation of the capital stock of the bank should not be raised to $43,000 for tax purposes. On account of ill health or by oversight he did not appear before the equalization board, and the valuation of the stock was increased to $43,000 by the equalization board.

"On January 30, 1924, before the time for the payment of 1923 taxes had expired, the said bank and its officers tendered to and offered to pay the taxes on real estate and stock as rendered, and the same was by the city authorities refused, for the reason that such tender did not pay the amount of taxes charged against the bank in full as shown by the tax roll. On the 18th day of September, 1924, the city instituted suit against the bank for the amount of taxes it claimed was due the city for the year 1923.

"The authorities of the city of Longview reached the conclusion that the stock of the bank had been improperly assessed against the bank and that the capital stock of the bank should be assessed against the stockholders of

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the bank owning said stock on January 1, 1923. On December 9, 1925, the city reassessed the capital stock of the bank against the stockholders thereof on a valuation basis of a total of $43,500, or $43.50 per share. The board of equalization was assembled, and such board notified the stockholders to appear before it on December 22, 1925, to show cause why such valuation should not be permitted to stand; that the stockholders through Mr. L. J. Everett, their agent, appeared before the board and gave evidence in support of the valuation of $22,000 upon the stock, or a valuation of $22 per share. The board was controlled in fixing the valuation of the stock at $43,500 by using a bank statement, issued by said bank, reporting the condition of the bank at the close of business on December 29, 1922, and published in the Longview Daily Times Clarion. This statement showed the bank to have a capital stock of $100,000, net undivided profits of $7,502.32. L. J. Everett offered evidence to the effect that the assets of the bank in December, 1922, and on January 1, 1923, were greatly impaired; that the comptroller of currency on December 13, 1922, ordered the officers of the bank to charge off assets as worthless to the amount of $46,456.58, which wiped out the surplus and undivided profits and impaired the capital stock to the extent of $39,017.17. The report of the condition of the bank as published did not show this charge-off, which charge-off was made on the books of the bank after the 1st day of January, 1923. L. J. Everett has collected for the stockholders of the bank out of said assets charged off as worthless about $3,000. On the 22d day of December, 1925, L. J. Everett, acting for the bank and its stockholders, again offered to pay to the city the taxes on the real estate and stock as originally rendered, but same was refused. He also tendered same to plaintiff in open court after this cause was called for trial and before trial thereof, but the same was refused.

"I find that, after the board of equalization assessed said bank stock, the stockholders did not appeal from said assessment, as required by the city charter of Longview.

"The city of Longview accepted all property for tax purposes and endeavored to equalize all property for tax purposes, including the property of banks and all other property in 1923, on a basis of 60 per cent. of the regular cash market valuation of all property. The amount at which the shares of the bank were rendered, to wit. $22,000, was full value for said bank stock, and I find that said stock was not worth at its market value more than $22,000.

"The value upon said stock by the officers and agents of the city was in excess of its true market value, and I find that the assessed valuation of $43,500 for said stock was excessive to the amount of $21,000, and was arbitrary, discriminatory, unjust, and unequal as compared to value of all other property in the city and assessed by the city, and especially, as to the value of property assessed to other banks in the city. I find that the authorities of the city were not making an intentional discrimination or intentionally assessing the property at an excessive, arbitrary, discriminatory, unjust, and unequal value, but fell into error by assessing the value of the stock of the bank upon the report of the condition of the bank as of December 29, 1922."

In this appeal the judgment rendered is attacked upon two grounds: (1) Because the facts do not show an arbitrary discrimination against the appellees by the board of equalization; and (2) because it conclusively appears that the appellees did not prosecute an appeal from the order of the board of equalization to the city commission, as is provided for in the city charter.

The city of Longview has what is called a "commission form" of government. The charter contains a provision which requires judicial notice by the courts of this state. However, several provisions of the charter were introduced in evidence, among them the following:

"Section 55. (b) *Duties of the Board.*—Should this charter be adopted prior to the time the board of appraisement existing under the charter now in effect shall have completed its work for the year 1923, then, and in that event, said first board appointed under this charter shall meet immediately and carefully examine the tax assessments for the year 1923, and properly and equitably adjust and equalize the taxable values thereon, and continue until they, have adjusted and equalized the valuation on all property on said rolls, and after the completion of said work make due report of its action to the board of commissioners; and for each year thereafter the work of said board shall be completed on or prior to July 1st.

Section 55. (c) *Appeal from Decision of Board.*—In case of dissatisfaction with the decision of said board of appraisement by any taxpayer, an appeal from the decision of the said board of appraisement and equalization may be had to the board of commissioners of the city of Longview, but said appeal must be by a written petition, especially stating the things complained of, and shall be filed with the person performing the duties of city secretary before the expiration of thirty days after said board has finally examined and passed upon the tax rolls of said city and made its final report to the board of commissioners, as herein provided. The decision of the board of commissioners in all cases of appeal from the decision of the board of appraisement and equalization shall be final and binding, and no appeal shall be allowed from the decision of said board of commissioners."

[1] It is conceded that the appellees did not prosecute the appeal provided for above, and in their brief no reason is given for failing to do so. Assuming that the valuation placed upon the property by the board of equalization was discriminatory, the taxpayers cannot resort to the courts for relief until they have invoked the remedies provided by the charter. Neither the city charter nor the statutes provides for an appeal to the courts from the ruling of the board of equalization or the city commission. The courts take cognizance of such controversies only when the complaining party has no other adequate remedy for the denial of a legal or constitutional right. It cannot be said, in this instance, that the appellees have no other adequate

remedy till they have exhausted that provided by the city charter. The evidence shows that, after the rulings of the board of equalization fixing the valuation of the property, the tax rolls were submitted to and approved by the commissioners, without any objection or protest from the appellees. Their failure to present an objection or protest must be treated as an acquiescence in the action of the commissioners. Railway Co. v. Scanlan, 44 Tex. 651; Duck v. Peeler, 74 Tex. 268, 11 S. W. 111; Scollard v. City of Dallas, 16 Tex. Civ. App. 620, 42 S. W. 640; Railway Co. v. Smith County, 54 Tex. 1. For that reason we think the trial court erred in setting aside the valuation fixed by the board of equalization and approved by the commission.

The judgment will therefore be reformed and affirmed.

### On Motion for Rehearing.

[2, 3] It is insisted that under the facts of this case the appellees were not required to appeal to the city commission in the manner provided by the city charter, before resorting to the courts to secure relief from an overvaluation of their shares of stock. The basis of that contention is the constitutional guaranty against an unfair discrimination in the exercise of the taxing power. It is true that it is the duty of the courts, when appealed to under proper conditions, to extend that constitutional protection. But the law contemplates that an aggrieved party shall, when he has the opportunity, apply for relief to the boards or agencies created specially for the purpose of correcting inequalities in assessments of property. There may be instances where a direct appeal may be made to the courts, as where an effort is made to collect an illegal tax, or where the property owner has, without his fault, been denied the opportunity to apply for relief to such equalizing boards or agencies. But there is no good reason why he should not be required to pursue the statutory or specially prescribed remedy when he has an opportunity to do so. Counsel for the appellees refer to the following cases in support of their contention. Ogburn v. Ward County Irr. Dist. No. 1 (Tex. Com. App.) 280 S. W. 171; Thompson v. Devine Ind. School Dist. (Tex. Civ. App.) 249 S. W. 887; and Town of Pleasanton v. Vance (Tex. Com. App.) 277 S. W. 89.

The first case was a suit by an irrigation district to collect delinquent taxes. Payment was resisted upon the ground that the taxpayer's property had been grossly discriminated against in the final valuation by the board of equalizers. The Court of Civil Appeals held that the evidence showed arbitrary and gross overvaluation and a deliberate undervaluation of the personal property in the district; that this was a fraud upon the taxpayers, which would ordinarily subject the action of the board to review by the courts. It held, however, that, as Ogburn, the taxpayer, had not rendered his property for taxes, he was charged by law with the notice that the tax assessor would present to the board a list of his property, and the board would appraise it; that it was his duty to go before the board and make an effort to see that his property was appraised upon the proper valuation; that, the law having provided a special tribunal for the purpose of appraisement and equalization, and no excuse for such failure, he had no remedy in the courts. In reviewing that decision, the Commission of Appeals held that Ogburn was entitled to notice before final action on the assessment of his property by the board of equalization. No notice had been given. For that reason, the commission stated, he was justified in not going before that board and protesting against an overvaluation of his property.

In the next case referred to above, the Devine independent school district sued Thompson to recover taxes assessed for two years upon a tract of land and a town lot owned by him. Thompson defended upon the ground that the board of equalization arbitrarily and fraudulently assessed his property at a value greatly in excess of its market value, that this valuation was determined by the amount of funds required by the school board, and not by the market value of the property. He also insisted that a valid levy and assessment had not been made. The trial court found that the taxes were regularly levied and assessed, and that notice was given the owner by the board of equalization of the proposed increase of the valuation of the property, and that he made no objection. The Court of Civil Appeals held that, while it appeared from the testimony that the board of equalization was primarily guided in the final valuation by the financial necessities of the school district rather than by a critical analysis of the market values, yet the evidence warranted the finding that the property was not assessed beyond its fair market value, and there was no contention that appellant was discriminating against, and the law's demands were satisfied. There is nothing in that case to sustain the proposition upon which the appellees rely.

In the last case mentioned above, the town of Pleasanton sued to recover delinquent taxes. The defendant, Vance, answered, pleading that his property was assessed at a value much above its market or cash value, at a much higher rate than other similar property in the town, and that its value had not been ascertained in accordance with the requirements of law. The trial court sustained a general demurrer to the answer, and, upon the evidence heard, a judgment was rendered in favor of the town of Pleasanton. On appeal, that judgment was reversed by the

Court of Civil Appeals, upon the ground that the facts alleged in the answer constituted a good defense. A writ of error was granted and the case referred to the Commission of Appeals, where the decision of the Court of Civil Appeals was affirmed. It seems that the principal defense in that case was that there had been no valid assessment for two years, and hence there was no right to collect any taxes for those years.

None of these cases supports the contention of the appellees, and none is in conflict with the ruling made in this case.

In the case of R. G. R. R. Co. v. Scanlan, referred to in the original opinion, the court refused to enjoin the collection of a tax on the ground of inequality in valuation. Justice Moore, in rendering the opinion, said:

"Although the tax may have been illegally assessed and the action of the sheriff in collecting it unauthorized, it does not follow that a court of equity will in all instances interpose to stay his action. A party asking for this extraordinary relief must have used all proper means to obviate the necessity of appealing to the court, and must not himself be in default. * * * For if the sufficiency of the petition is tested by reference to the former law we find that appellant seeks to enjoin the collection of the tax assessed by the justice of the peace merely upon the failure of the arbitrators chosen by appellant and said officer to value the property to be assessed, or if they disagreed as to its value, to select a third arbitrator, without its being made to appear that appellant unsuccessfully sought to induce the arbitrators to perform the duty for which they were chosen, and without endeavoring to correct the assessment by an appeal to the county court from the order of the justice of the peace fixing the assessment against appellant on his rolls, without said arbitrators having decided upon the value of the property."

I & G. N. R. R. Co. v. Smith County, also cited, is another case in which the taxpayer sought to enjoin the collection of taxes on account of an excessive and unequal assessment. After discussing the facts at considerable length the court said:

"Occupying the position of seeking equity relief against alleged unauthorized action of the board, it devolved upon appellant to establish clearly facts showing that the board had acted illegally or without authority. The facts established are insufficient to show with requisite certainty that the railroad proceeded under section 17 [Acts 1876, c. 153]. Whether the proceeding was so regarded at the time or not, we, for the purposes of this case, must regard it as under section 5 and hold the assessor authorized to proceed under that section. * * * It sufficiently appears that the assessor did reject the valuation, and did refer the question to the board, and that the valuation complained of was affixed by the board of equalization, the appellant having had notice of the reference and time of meeting. The expressed intention of the law is to make the decisions of the board of equalization final on the question of valuation. If that tribunal errs and affixes an ex-

cessive valuation, that fact gives the taxpayer no right to resort to the courts for relief. * * * It would seem to be the design of the law that the person rendering property should in some way have an opportunity to present his side of the question to the board. In this case it has not been shown that the appellant was denied such opportunity. The adoption by the board of a general rule not to hear evidence or argument, did not amount to such denial. A party desiring the equitable aid of the court on such a ground should show that he at the proper time and in the proper way demanded to be heard, or offered to adduce evidence, and was denied. Whether, if he had made such a showing, the courts would have been empowered to interpose, is a question not now before us."

In Duck v. Peeler, supra, the trial court perpetuated the injunction against the collector, restraining the collection of taxes assailed upon the ground that the assessor had illegally increased the valuation of the property. The Supreme Court, in an opinion by Chief · Justice Stayton, reversed that judgment and dissolved the injunction. Among other things, he said:

"Looking to the entire petition it is evident that appellee bases his statement that the board of equalization did not order his property to be assessed at the value stated in the tax roll on the fact that he found no such order on the minutes of that court. The petition does not state that he had applied to the board of equalization at any time to correct his assessment if raised without authority, nor does he give any reason for not doing so or show that he could not have obtained relief in that way if entitled to it. * * *

"If, however, no action was taken by that board and the assessment was raised unlawfully by the assessor, then the statute gave appellee a complete, speedy, and adequate remedy, for the statute declares that 'the board of equalization shall have power to correct any errors in the assessment of property at any time before the tax is paid on said property.'"

The principle above stated is, we think, equally applicable here. There the court refused to correct an error made by the assessor because the taxpayer had failed to exercise his right of appeal to the board of equalization. In this instance the ruling of the board of equalization was subject to review by the city commission, and the taxpayer has failed to exercise that right of appeal.

In 2 Cooley on Taxation (3d Ed.), beginning on page 1382, the author says:

"The courts of common law or of equity are powerless to give relief against the erroneous judgments of assessing bodies, except as they may be specially empowered by law to do so. This principle is applicable to statutory boards of equalization, which are only assessing boards with certain appellate powers, but whose action, if they keep within their jurisdiction, is conclusive except as otherwise provided by law, although if fraud is charged there may be a remedy in equity under principles to be stated hereafter. And the general rule is that, if one fails to appeal to the statutory board of re-

view, he can have no remedy in the courts. But where the defect is jurisdictional one does not lose rights by failing to appeal to a board or council which could not have remedied the defect."

In the following cases the Supreme Court of Michigan has decided substantially the very question involved in this case: Michigan Savings Bank v. City of Detroit, 107 Mich. 246, 65 N. W. 101; Detroit River Savings Bank v. City of Detroit, 114 Mich. 81, 72 N. W. 14. In the case last referred to the court said:

"The charter of the city of Detroit made it the duty of the plaintiff to appeal from the action of the assessors to the common council * * * during the period when the assessment roll was in their hands. Having failed to do this, we think the case comes within the decision made in Michigan Sav. Bank v. City of Detroit."

In Stanley v. Board of Supervisors, 121 U. S. 535, 7 S. Ct. 1234, 30 L. Ed. 1000, the court passed upon a question somewhat similar to that here involved. There the complaint was that the shares of stock in a national bank had been overvalued for the purpose of taxation. The taxes had been paid, and the suit was to recover the excess. It appears from the facts that the method adopted by the local board in ascertaining the value of the shares of stock was practically the same as that adopted by the board of equalization of the city of Longview in this case, and the court held that it was a reasonable one. Among other things, it said:

"To these boards of revision, by whatever name they may be called, the citizen must apply for relief against excessive and irregular taxation, where the assessing officers had jurisdiction to assess the property. Their action is judicial in its character. They pass judgment on the value of the property upon personal examination and evidence respecting it."

The motion is overruled.