## STEVENS et al. v. CITY OF EL PASO.
### No. 3159.

Court of Civil Appeals of Texas. El Paso.
March 7, 1935.

Rehearing Denied April 4, 1935.

R. J. Channell, of El Paso, for appellants.

Theodore Joseph, Joseph J. Roybal, and Frank B. Clayton, Asst. City Attys., J. H. McBroom, City Atty., D. E. Mulcahy, Co. Atty., and R. P. Langford, Asst. Co. Atty., all of El Paso, for appellee.

WALTHALL, Justice.

This is a suit for taxes and to foreclose a tax lien.

The suit was brought by the city of El Paso against Charles B. Stevens, Mrs. Emma Stevens, wife of Charles B. Stevens, and others made defendants in the suit, seeking to recover judgment for taxes, penalties, etc., and a foreclosure for taxes, for the years stated, against certain real estate, fully described in the petition, located in said city. The suit was brought by the city attorney on behalf of the city. The state of Texas and El Paso county, through the county attorney of El Paso county, intervened to recover for taxes due and penalties, etc., and foreclosure of the tax lien against the same property for state and county taxes. The court overruled all demurrers of plaintiff and intervener, and a joint judgment was rendered in favor of plaintiff and intervener for the full amount of the taxes, interest, penalties, costs, and attorney's fees claimed to be due, and foreclosing their liens against said property and ordering same sold and the proceeds apportioned ratably between the two.

From the judgment, Charles B. Stevens and wife perfected their appeal to this court.

Opinion.

Appellants complain that said property for tax purposes during all the years involved was grossly overvalued, and the taxes were calculated on sums greatly in excess of the market value of said property; that the valuations for tax purposes were not the reasonable cash market value or its true full value in money, but were the adoption of valuations made by nonresident specialists in accordance with what is referred to as the Somers System of Valuation; that the taxes were calculated upon said property at a valuation fixed about 1925 by Stoner & Pollack, and about 1930 by George Ehrenborg, neither of whom had any connection with the tax assessor's office, and who arrived at their calculations by intricate methods of applying a unit valuation, and that these valuations were adhered to through the years and modified only by blanket reductions applying uniformly to all property in the city without reference to the actual value of the property involved; in rendering judgment for plaintiff and intervener establishing as valid their tax claims where the evidence showed that for every year involved in this suit plaintiff and intervener had followed the policy of excluding from their tax rolls, and not taxing, bank deposits, money, or promissory notes; error in rendering judgment for lump sum, including taxes, interest, penalties, costs, and attorney's fees, and establishing same as a lien against the property shown to be appellant's homestead for all of said years and at the time of the trial.

Without quoting from the evidence, we will state the material facts as shown by the undisputed evidence, when the evidence is undisputed, and will state only such facts as seem pertinent to the points submitted in the briefs.

For all the times involved here the city of El Paso was constituted an independent school district.

The records show that for each of the years beginning 1922, up to and including 1929, the property was on the unrendered roll and was assessed for taxes by the city of El Paso at a

valuation of $12,830, the last two of said years at $12,890, and on those values the calculations for taxes were made, and for those years the payment of taxes were delinquent. For the years 1930 and 1931, the value was placed at $12,310; for the years 1932 and 1933, the value was placed at $11,080.

The record shows that beginning with the year 1925, at the employment of the city, the valuation of the property for taxation was fixed by Stoner & Pollack, and for the year 1930 by George Ehrenborg, by a method for fixing valuations for taxes not necessary to state here in detail, but a method in general use over the country whenever they have a valuable system and referred to as Standard Unit System.

The system is based on a unit of value per front foot. The unit value is fixed by a board of local real estate men. The same method was used in fixing land values in the city. In 1932 the land values in the city were reduced 10 per cent., and in 1933 an additional reduction of 10 per cent. was made, and in those years the values for taxation were fixed at 70 per cent. of those values. The city used these valuations. These valuations were made exhibits, and introduced as such. The values as stated were taken into consideration by the assessor, who considered the values as a fair market value, and accepted them.

The intervener's suit was for delinquent taxes for the years 1925 to 1932, both inclusive, and on the same property. The record shows that for the years 1926 and 1927, Laurence E. Stevens, son of Charles B. Stevens, rendered the property for state and county taxes at the valuation of $11,500. In 1933, the property was on the unrendered roll, and the county commissioners in that year, on complaint as to valuation, reduced the valuation from $11,500 for the years 1929, 1930, and 1931; and from the valuation of $8,300 for 1932, to $8,000. At that time the county tax assessor in person inspected the property and fixed the values as stated, and the county commissioners approved the valuation. Up to 1932 the Stoner & Pollack or Ehrenborg valuations of property had been used; such had been the policy of the city and county. H. Z. Collier, deputy city tax collector since 1928, testified that from 1928 there was no protest as to excessive valuations; no decline in values until 1931; to that time the values fixed by the experts were considered fair market value and were accepted. The bank deposits were never assessed.

For the years stated, the taxes had not been paid. Several witnesses testified on the trial as to the cash market value of the property from that time and running back through several years what some of the witnesses designated as "distress years," and stated the values from about $4,000 to about $8,000.

The record shows that in 1925 Charles B. Stevens rendered the property for taxes at $18,410.

With the above brief statement of facts gathered from about 100 pages of the statement of facts, presented in questions and answers, we think we may consider the propositions together.

We have not found in the record that the valuation of the property for taxes was arbitrarily or fraudulently fixed by the assessors of the city or county, or by the board of equalization of either; nor do we find from the record that appellant contested before either board of equalization the value of the property as fixed for taxation. Nor have we found in the record anything that necessitated the giving of notice to the owner before final action of the board. For some of the years for which the taxes were due both to the city and the state and county the property was rendered for taxation by the owner or by his son for the owner; on other years the property was not rendered and the value for taxation stated by the experts named, and such value was accepted by the assessors and by the boards of equalization. The taxes in no instance were alleged or claimed to have been paid or offered to be paid.

The charter of the city, section 138, provides that, when not inventoried, rendered, and assessed by the owner, it is the duty of the assessor to make the rendition for taxes; section 140 of the city charter provides that the board of equalization shall equalize as near as possible the value, and that any person may file with the board before final action a complaint as to the assessment, and that the board shall hear said complaint.

Section 151 of the charter provides that, where taxes are raised by the board, notice to the taxpayer is given of such raise. We have not found in the record any instance where the valuation was raised. Beginning with the case of Rio Grande R. Co. v. Scanlan, 44 Tex. 649, in which the complaining party brought an injunction to restrain the collection of taxes, for which the property had been assessed as excessive, in that case and other cases where the action of the board was brought into question without injunction,

the courts have uniformly held that a party asking for relief must have used all proper means to obviate the necessity of applying to the courts, and must not himself be in default. Articles 7206, 7211 and 7212, of the Revised Civil Statutes, provide for a board of equalization whose functions are similar to those of the city in the matter of equalizing taxes of the state and county. To the same effect as Rio Grande R. Co. v. Scanlan, supra, are Duck v. Peeler, 74 Tex. 268, 11 S. W. 1111; International & G. N. R. Co. v. Smith County, 54 Tex. 1; Swenson v. McLaren, 2 Tex. Civ. App. 331, 21 S. W. 300; Clawson Lumber Co. v. Jones, 20 Tex. Civ. App. 208, 49 S. W. 909; Mann v. State, 18 Tex. Civ. App. 701, 46 S. W. 652; Moody v. City of Galveston, 21 Tex. Civ. App. 16, 50 S. W. 481; City of Longview v. Citizens' National Bank et al. (Tex. Civ. App.) 294 S. W. 313 (on motion for rehearing), and Stanley v. Board of Supervisors of Albany County, 121 U. S. 535, 7 S. Ct. 1234, 30 L. Ed. 1000, referred to in the opinion; Linz v. City of Sherman (Tex. Civ. App.) 62 S. W. 71; Druesdow v. Baker (Tex. Com. App.) 229 S. W. 493.

We have concluded from the above cases and others we have reviewed that the boards of equalization being judicial in their character in that they pass judgment on and fix the value of property for taxation, the owner of property, in proper cases, must apply to such board for relief against excessive taxation. Some of the cases above referred to, Mann v. State, and Patrick v. City of Taft (Tex. Civ. App.) 52 S.W.(2d) 297; Ramey v. City of Tyler (Tex. Civ. App.) 45 S.W.(2d) 359; State v. Hoffman, 109 Tex. 133, 201 S. W. 653, and Simpkins on Equity, hold that to give a taxpayer standing in a court of equity he must tender what is legally due, if only a part is due. That rule is laid down in Pomeroy's Equity Jurisprudence (4th Ed.) par. 1784, p. 4155, and 1 High on Injunctions, par. 497.

The record does not show any offer or tender by pleading or otherwise to pay any taxes, though there is no denial that any taxes are not due.

In the absence of any showing that the assessors and the boards of equalization acted fraudulently or arbitrarily in fixing the valuation of the property for taxation, and in the absence from the record of any finding by the trial court of any value of said property for taxation, the testimony as to value being in conflict, it must be presumed here that the trial court found the value to be the same as fixed by the boards of equalization, and we

must so find. 3 Tex. Juris. p. 1059, par. 747, and cases referred to in notes.

We think the taxpayer may not defend against the payment of taxes due on the ground of the bare omission from the tax rolls of certain property, such as bank deposits held in trust. Altgelt v. City of San Antonio, 81 Tex. 436, 17 S. W. 75, 13 L. R. A. 383.

The homestead is liable for penalties, interest, and costs, and attorney's fees in a tax suit. City of San Antonio v. Toepperwein, 104 Tex. 43, 133 S. W. 416; Tate v. McGraw (Tex. Civ. App.) 73 S.W.(2d) 559.

We think that it is not a sufficient defense in the suit for taxes that the valuation of the property for taxation was stated by the tax experts, Stoner & Pollack and Ehrenborg, to the tax assessors and the board of equalization, at the employment of such board or boards, and that the valuation was so fixed.

In Federal Royalty Co. v. State, 42 S.W.(2d) 670, affirmed Sheffield v. Hogg (Tex. Sup.) 77 S.W.(2d) 1021, this court reviewed that question. In that case the assessor had no independent knowledge of the value of the unrendered real estate, but used the inventory and valuation furnished by an expert employed by the county commissioners. It was there held that such valuation did not invalidate the assessment, and referred to cases as so holding, such as Roper v. Hall (Tex. Civ. App.) 280 S. W. 289; Maud v. Terrell, 109 Tex. 97, 200 S. W. 375.

However, we do not desire to be understood as approving an arbitrary system of valuing property for taxation which ignores factors vitally important in properly determining such value. Ogburn v. Ward County Irr. Dist. No. 1 (Tex. Civ. App.) 267 S. W. 316; Id. (Tex. Com. App.) 280 S. W. 169.

We desire also to state that we have no doubt of the right of a taxpayer to resort to the courts for protection against excessive valuations placed upon his property by tax assessors, provided the taxpayer has first taken the action provided by law for his protection by appealing to the board of equalization. When the taxpayer does take such action and the board intentionally and arbitrarily values his property in excess of its then true full value, the taxpayer is entitled to relief in the courts. Power v. Andrews (Tex. Civ. App.) 253 S. W. 870; City of Sweetwater v. Baird Development Co., 203 S. W. 801; and cases there cited.

Finding no reversible error, the case is affirmed.