## NATIONAL LABOR RELATIONS BOARD v. MAY DEPARTMENT STORES CO.

### No. 13468.

Circuit Court of Appeals, Eighth Circuit.
June 20, 1947.

Rehearing Denied July 28, 1947.

Charles K. Hackler, Regional Atty., N. L.R.B., of Clayton, Mo. (Gerhard P. Van Arkel, Gen. Counsel, N.L.R.B., Morris P. Glushien, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Ida Klaus and Ben Grodsky, Attys., N.L.R.B., all of Washington, D. C., on the brief), for petitioner.

Robert T. Burch, of St. Louis, Mo. (Milton H. Tucker, of St. Louis, Mo., on the brief), for respondent.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

The respondent operates a large department store in St. Louis, Missouri, known as Famous-Barr. On July 7, 1945, the respondent discharged Marie Lee, an elevator operator who had been in its employ for 16 years. The reasons given for her discharge were insubordination, disobedience, and repeatedly violating store rules. Marie Lee was an organizer for Elevator Operators and Starters, Local 50E, affiliated with Building Service Employees International Union, A.F. of L. She had been active in its behalf since 1943. The union had been attempting to organize respondent's elevator operators.

Shortly after the discharge of Marie Lee by respondent's Superintendent of Employment, he was advised by counsel for respondent that some one connected with the union had inquired whether Marie Lee could be reinstated. The Superintendent, after some further investigation, informed counsel that he would not reinstate her. Thereafter the union filed charges against respondent with the National Labor Relations Board. In substance, the charges were that respondent had engaged in unfair labor practices within the meaning of § 8(1) and (3) of the National Labor Re-

lations Act, 29 U.S.C.A. § 158(1) and (3), in that respondent had discharged Marie Lee because she joined and assisted the union; and that respondent had interfered with its employees in the exercise of the rights guaranteed them in § 7 of the Act, 29 U.S.C.A. § 157, by urging, persuading and warning its employees against joining the union, by questioning its employees relative to activities on behalf of the union, by arranging dinners for its employees for the purpose of making anti-union speeches, and by engaging in surveillance of its employees for the purpose of ascertaining and discouraging their union activities.

The Board issued a complaint based upon these charges. The respondent, in its answer, denied them. The usual proceedings followed. The ultimate result was that the Board found that respondent had discharged Marie Lee because of her union activities; that "Supervisor Winfield" had made anti-union statements to Marie Lee and other employees and had threatened her with discharge for her union activities. The Board absolved the respondent from the other charges. The order of the Board was the usual cease and desist order, coupled with the requirement that Marie Lee be reinstated without loss of wages. The Board now seeks the enforcement of its order. The respondent asks that the order be set aside upon the ground that the findings of the Board are without adequate evidentiary support. .

The hearing before the Trial Examiner was largely a contest in veracity between Marie Lee, the discharged elevator operator, and Myrtle Frazier Winfield, respondent's "Supervisor of Elevator Operators and Starters." The contention of respondent is, in substance, that Marie Lee's testimony, because of inconsistencies, self-contradictions and improbabilities, did not rise to the dignity of substantial evidence, and that this Court should now rule, as a matter of law, that the Board was precluded from basing any findings upon her testimony.

Marie Lee testified that in or about December, 1943, Mrs. Winfield said to her that she (Lee) "was going to keep on fooling around with the union until she got fired"; that, at an assembly of elevator operators and starters in the rest room of the store, probably in the spring of 1945, Mrs. Winfield quoted "a colored fellow from the Peace Conference in San Francisco" as saying that "Unions wasn't for colored people, they did not do colored people any good at all and we should let them alone"; that on May 25, 1945, Mrs. Winfield said to Marie Lee "that she [Winfield] knew enough on me [Lee] to get me fired"; that Marie Lee then said to her: "Well, what do you know on me that you could get me fired * * * I am not doing anything other than organizing for the Union * * * what do you know that I have done as bad as all that that I would get fired"; and that Mrs. Winfield then replied, "Oh, I won't go into the details, but you heed my warning." According to the testimony of Marie Lee, she had been an exemplary employee who had never been reprimanded and had never violated any store rules or been insubordinate.

Mrs. Winfield testified that she had not made any of the anti-union statements attributed to her by Marie Lee; that Marie Lee on several occasions had been reprimanded by her for violating store rules relative to the operation of elevators; that she (Mrs. Winfield), on the occasion of one of the violations, when she found Marie Lee's elevator out of service, said to her, "What are you doing up here out of service"; that Marie Lee said, "I am just getting some gloves"; that Mrs. Winfield said, "Well, you know that it is against the rules of the store and you shouldn't be up here out of line during the busy time of the day; I have been reprimanding you so many times before, if you aren't careful now I will have to let you go; I can't keep getting after you about these things." Mrs. Winfield also testified that Marie Lee had been disrespectful and insubordinate; and that shortly before the discharge of Marie Lee, Mrs. Winfield had told the Superintendent how disrespectful and insubordinate she had been, that she was a bad example for the younger girls, and that she (Mrs. Winfield) thought that Marie Lee should be discharged for the good of the department.

The respondent's evidence indicated that Marie Lee's union affiliations and activities had nothing to do with her discharge, and that the discharge was based solely upon complaints made to the Superintendent of Employment by Mrs. Winfield and others to the effect that Marie Lee had been insubordinate and had repeatedly violated store rules in connection with the operation of elevators and in soliciting other operators, while they were at work, to join the union.

Whether Marie Lee was discharged because of her union affiliations and permissible union activities was an issue of fact for the Board to determine. The Board, and not this Court, is the judge of the credibility of the witnesses and the weight of their evidence. "Congress entrusted the Board, not the courts, with the power to draw inferences from the facts * * *. The Board, like other expert agencies dealing with specialized fields * * * has the function of appraising conflicting and circumstantial evidence, and the weight and credibility of testimony." National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 597, 61 S.Ct. 358, 365, 85 L.Ed. 368. See also, National Labor Relations Board v. Nevada Consolidated Copper Corporation, 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305; Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 501, 64 S.Ct. 239, 88 L.Ed. 248. Whatever mistakes the Board may make in appraising the credibility of witnesses and the weight of evidence, and in drawing inferences from conflicting or circumstantial evidence, are errors of fact which, like similar errors committed by a jury, are not subject to correction on review. Compare, Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 444; United States v. Washington Dehydrated Food Co., 8 Cir., 89 F.2d 606, 608-610. The findings of the Board upon issues of fact are conclusive on review, no matter how convincing may be the argument that upon the evidence the findings should have been different. Compare, Stanley v. Supervisors of Albany, 121 U.S. 535, 547, 7 S.Ct. 1234, 30 L.Ed. 1000.

The petition of the Board for the enforcement of its order is granted.